[Cite as *In re J.D.*, 2022-Ohio-2334.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

IN THE MATTER OF:

J.D., DELINQUENT CHILD

**CASE NO. 2021-L-126**

Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2021 DL 00450

**O P I N I O N**

Decided: July 5, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *R. Tadd Pinkston*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, J.D., appeals the judgment issuing dispositional orders following his delinquency adjudication. We affirm.

{¶2} On August 4, 2020, a complaint was filed in the Juvenile Division of the Cuyahoga County Court of Common Pleas alleging J.D. to be a delinquent child within the meaning of R.C. 2152.02(E) for committing the following offenses that would constitute felonies if committed by an adult: rape, in violation of R.C. 2907.02(A)(2); rape, in violation of R.C. 2907.02(A)(1)(c); gross sexual imposition, in violation of R.C. 2907.05(A)(4); and disseminating matter harmful to juveniles, in violation of R.C.

2907.31(A)(2). The charges stemmed from allegations that J.D., age twelve, engaged in sexual conduct and contact with, and showed pornography to, his seven-year-old autistic step-cousin at their grandmother's home.

{¶3} J.D. denied the allegations. After an in-camera interview with the then eight-year-old victim, the court found him competent to testify. The case proceeded to an adjudicatory hearing before a magistrate.

{¶4} On April 8, 2021, the magistrate issued a decision finding J.D. delinquent on the two rape charges as well as the gross sexual imposition charge. The magistrate found J.D. not delinquent on the disseminating matter harmful to juveniles charge. The magistrate determined that the matter should be transferred to the Juvenile Division of the Lake County Court of Common Pleas for further proceedings pursuant to Juv.R. 11.[1] No objections were filed challenging the magistrate's April 8, 2021 decision, and, on May 4, 2021, the court adopted the magistrate's decision and entered judgment accordingly.

{¶5} After the case was transferred to the Lake County Juvenile Court, a dispositional hearing was held before a magistrate. Thereafter, the magistrate issued a decision on September 1, 2021, indicating that J.D. had moved to merge the two rape counts. The magistrate denied the motion and recommended disposition as follows: for each of the rape counts, that J.D. be committed to the custody of the Ohio Department of Youth Services ("ODYS") for a period of not less than one year and not exceeding J.D. attaining the age of 21 years, suspended on conditions, and that J.D. serve 90 days in

---

1. Juv.R. 11(A) provides in relevant part, "If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required. The court of the child's residence shall then proceed as if the original complaint had been filed in that court."

2

Case No. 2021-L-126

the Lake County Juvenile Detention Facility, also suspended on conditions; and on the gross sexual imposition count, that J.D. be committed to ODYS for a period no less than six months and not exceeding J.D. attaining the age of 21 years, suspended on conditions, and that he be held in the Lake County Juvenile Detention Facility for a period of 90 days commencing September 1, 2021, with all but three or five days suspended based upon J.D.'s behavior as gauged by the facility's point system.  On September 2, 2021, the trial court adopted the magistrate's decision and entered judgment accordingly.

{¶6}    On September 15, 2021, J.D. filed objections to the magistrate's decision, arguing that the three counts should have merged for purposes of disposition.  On November 22, 2021, the trial court overruled the objections and adhered to its prior decision adopting the magistrate's decision.

{¶7}    J.D. assigns six errors.  We address the first five assigned errors together:

> [1.]   J.D. was deprived of his constitutional rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when the trial court granted the state's Crim.R. 7(D) motion after the close of the defense's case when the juvenile claimed an alibi.
>
> [2.] The trial court erred to the prejudice of J.D. when it allowed improper expert witness testimony.
>
> [3.] The trial court erred to the prejudice of * * * J.D. when it denied his motion for judgement of acquittal.
>
> [4.] The trial court erred to the preju[dice] of J.D. when it returned a verdict of true against the manifest weight of the evidence.
>
> [5.] J.D. was denied the effective assistance of counsel guar[a]nteed by Sixth and Fourteenth Amendments to the U.S. Constitution and the Ohio Constitution, Article 1, Section. [sic.]

3

{¶8} In his first four assigned errors, J.D. challenges the proceedings that culminated in the magistrate's decision of April 8, 2021, and in his fifth assigned error, J.D. alleges ineffective assistance of counsel for failure of counsel to file objections to the April 8, 2021 magistrate's decision.

{¶9} Pursuant to Juv.R. 40(D)(3)(b)(iv), "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Accordingly, with respect to the first four assigned errors, J.D. has forfeited all argument with respect to the trial court's adoption of the April 8, 2021 magistrate's decision except for plain error. *See* Juv.R. 40(D)(3)(b)(iv); *see also Dinardo v. Dinardo*, 11th Dist. Lake No. 2016-L-111, 2017-Ohio-4379, ¶ 17 (pursuant to Civ.R. 53(D)(3)(b)(iv), failure to object on a particular issue forfeits all but a plain error argument on appeal with respect to that issue) and Civ.R. 53(D)(3)(b)(iv) (containing language equivalent to that set forth in Juv.R. 40(D)(3)(b)(iv)). "[T]he plain-error standard that [applies] in criminal proceedings [applies] when errors that are not preserved arise in juvenile-delinquency proceedings." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 49.

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden of proof to demonstrate plain error on the record * * * and must show "an error, *i.e.*, a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). However, even if the error is obvious, it must have affected substantial rights, and "[the

4

Supreme Court of Ohio has] interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims. *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B), and also noting that the burden of proving entitlement to relief for plain error "should not be too easy").

(Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶10} Here, although J.D. does not specifically argue plain error in his first four assigned errors, in his fifth assigned error, J.D. maintains that trial counsel was ineffective for failing to file objections to the magistrate's decision and thereby preserve his arguments under Juv.R. 40(D). Accordingly, we review J.D.'s first four assigned errors through the lens of ineffective assistance of counsel. *See In re Darvius C.*, 6th Dist. Erie No. No. E-00-064, 2002 WL 328377, *2 (Mar. 1, 2002) and *In re Williams*, 3d Dist. Allen No. 1-94-73, 1995 WL 380063, *2 (June 21, 1995).

{¶11} "The same analysis used to establish ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], employed in adult criminal proceedings, also applies to the issue in juvenile delinquency proceedings." *In re S.R.*, 6th Dist. Ottawa No. OT-09-024, 2010-Ohio-3073, ¶ 33, citing *In re S.M.*, 4th Dist. Lawrence No. 09CA5, 2009-Ohio-3118, ¶ 15 and *In re J.J.*, 9th Dist. Summit No. 21386, 2004-Ohio-1429, ¶ 13; *see also In re B.W.K.*, 11th Dist. Portage No. 2009-P-0058, 2010-Ohio-3050, ¶ 15 (applying *Strickland* to a juvenile's claim of

5

ineffective assistance of counsel in delinquency proceedings). To demonstrate ineffective assistance of counsel,

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999), quoting *Strickland* at 687.

**{¶12}** J.D.'s first four assigned errors, which we review under the *Strickland* standard pursuant to his fifth assigned error, pertain to his delinquency adjudication.

**{¶13}** A "delinquent child" pursuant to R.C. 2152.02(E)(1) refers to "[a]ny child, except a juvenile traffic offender, who violates any law of this state or the United States, or any ordinance of a political subdivision of the state, that would be an offense if committed by an adult[.]" The magistrate found J.D. delinquent on three counts alleged in the complaint: rape, in violation of R.C. 2907.02(A)(2); rape, in violation of R.C. 2907.02(A)(1)(c); and gross sexual imposition, in violation of R.C. 2907.05(A)(4). With respect to the rape charges, R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(1)(c) provides that "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * *

6

*."  "Sexual conduct" as used in R.C. 2907.02 includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).  With respect to the allegation of gross sexual imposition, R.C. 2907.05(A)(4) provides that "[n]o person shall have sexual contact with another * * * when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."  "Sexual contact" for purposes of R.C. 2907.05 refers to "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶14}  Here, the complaint alleged that the instances of sexual conduct and sexual contact occurred on or about April 1, 2020 to May 21, 2020 at the children's mutual grandmother's house in Lakewood, Ohio.  Prior to trial, J.D. filed a "notice of alibi," stating that he would testify that he was not present at his grandmother's home during the period of April 1, 2020 through May 21, 2020.

{¶15}  At the adjudicatory hearing, the victim and his mother testified that the victim is autistic, and the mother indicated that "everyone" is aware of this.  The victim testified that his grandmother would watch him and his younger brother every day that his mother worked.  The victim maintained that there was a children's bedroom at his grandmother's house, where J.D. "raped" him.  The victim acknowledged that he heard the word "rape" from his mother but explained J.D.'s conduct as sticking his "wee-wee" in the victim's "butt."  The victim recalled an instance when he and J.D. were lying in bed, and J.D. asked

7

if he wanted "to do it." The victim indicated that he understood J.D. to be asking about doing something with his private parts because "[t]his wasn't the first he did this," and it was "every day, every day he did this." The victim also maintained that J.D. said, "If you tell somebody about this, if you tell somebody about this, harm, harming" although it is unclear from the testimony when this statement occurred. The victim indicated that J.D.'s statement got him "shook." He testified that J.D. fought him at the grandmother's house, and "while fighting over it" the victim received a black eye, although it is unclear when this altercation occurred. The victim eventually disclosed the abuse to his "nanny," later identified as the victim's maternal great-grandmother, who informed the victim's mother. The victim appeared to have difficulty conceptualizing time frames on cross-examination.

{¶16} The victim's mother testified that, on May 17, 2020, the victim, who was nearly eight years old at the time, disclosed to her that J.D. put his penis in the victim's buttocks on numerous occasions while in the care of the grandmother overnight. Neither the victim nor his mother provided specific dates of the instances of abuse.

{¶17} The victim's therapist testified as an expert over objection of J.D.'s counsel. The therapist maintained that the victim was able to understand his questions and verbalize responses. The therapist confirmed the victim's autism diagnosis and diagnosed the victim with post-traumatic stress disorder. The therapist indicated, over objection of J.D.'s counsel, that the victim's behaviors were consistent with a child who had been sexually abused. On cross-examination, the therapist acknowledged that he was unaware of who developed the intake form that his agency requires to be used, and which he used in assisting his diagnoses of the victim. However, on redirect examination,

8

the therapist maintained that this form was used in conjunction with the DSM-5 in rendering the diagnoses.

{¶18} A social services worker from Children and Family Services and the investigating detective also testified. The social services worker testified that she conducted interviews with the victim and J.D. after being referred this case. She maintained that the victim was consistent with relaying his version of events. She testified that the victim indicated to her that one of the incidents occurred at 2:00 p.m. or 3:00 p.m., and she did not recall the victim informing her that incidents occurred during the nighttime while in bed. The detective assigned to investigate this case testified that she learned of the accusations but could not determine precisely when the abuse occurred.

{¶19} After the state presented its case, J.D. moved to dismiss the complaint, and the magistrate denied the motion.

{¶20} On behalf of J.D., J.D.'s mother testified that the victim's mother informed her of the disclosure on a three-way telephone call with the grandmother on May 17, 2020. J.D.'s mother testified that J.D. had not been to his grandmother's house since August or September 2019. J.D.'s mother indicated that on May 17, 2020, J.D. had been at a birthday party during the day and slept over at his friend's house. J.D.'s mother authenticated a photograph of the children at the birthday party and text messages between herself and J.D. indicating that he was sleeping over at a friend's house that night.

{¶21} J.D.'s grandmother testified that J.D. had not been at her residence since August or September 2019. At some time prior to 2020, the victim told her that J.D. had put some "freaky stuff" on the victim's phone. The grandmother spoke with both children,

9

who each blamed each other, but the grandmother did not see anything on the phone. She then called the mothers of both children to let them know about the incident. The grandmother maintained that during the times the children were both in her care, she did not witness any unusual behavior between them. On cross-examination, the grandmother acknowledged that she would regularly babysit the victim and his brother, and J.D. would visit sometimes. The grandmother acknowledged that she told police when interviewed in this matter that the victim had reported to her that J.D. touched his "bootie," but when the grandmother asked the victim to show her what he meant, he refused. On redirect examination, the grandmother indicated that it had to be in 2019 that the telephone incident occurred, but after "trying to think" indicated that it could have occurred in 2020.

{¶22} J.D. testified that he was 13 years old at the time of the hearing. He recalled that he would visit his grandmother at her home when he was 11 and 12 years old. J.D. maintained that he did not go to his grandmother's home much when the victim and his brother were there because he found them annoying and wanted time alone with his grandmother. J.D. maintained that he has not been at his grandmother's house since his birthday in October 2019. That year, he went to her house fewer than ten times and did not recall spending the night that year. He recollected that the victim was at his grandmother's house maybe once or twice when J.D. visited. The last occasion that he saw the victim at his grandmother's house, the victim "looked up some nasty stuff on the phone" involving "puppets" or "cartoon stuff" and J.D. told his grandmother, but the victim blamed J.D. J.D. maintained this incident occurred in 2018. J.D. stated that when he did stay overnight at his grandmother's, he usually slept on the couch, because the guest bedroom is where the victim and his brother slept. He recalled that both he and the victim

10

had slept in the same bedroom with his grandmother when she previously had a one-bedroom house. J.D. denied that he ever touched the victim. On cross-examination, J.D. confirmed that he is five years older than the victim and larger in size. He acknowledged that he is aware that the victim has autism, but he maintained the victim behaved like other eight-year-olds, similar to J.D.'s sister who is the same age.

{¶23} After the testimony, J.D.'s counsel renewed the motion to dismiss, which the trial court denied. The state then moved to amend the charges "pursuant to Crim.R. 7(D)" to change the time frame of the offenses to August 1, 2019 to May 21, 2020. The court granted the motion over J.D.'s objection.

{¶24} On appeal, J.D.'s first argument pertains to the trial court granting the state's Crim.R. 7(D) motion after the close of J.D.'s case. However, Juv.R. 22(B), not Crim.R. 7(D), applies to the amendment of delinquency complaints. *See In re T.J.,* 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 8. Pursuant thereto,

> Any pleading may be amended at any time prior to the adjudicatory hearing. After the commencement of the adjudicatory hearing, a pleading may be amended upon agreement of the parties or, if the interests of justice require, upon order of the court. A complaint charging an act of delinquency may not be amended unless agreed by the parties, if the proposed amendment would change the name or identity of the specific violation of law so that it would be considered a change of the crime charged if committed by an adult. Where requested, a court order shall grant a party reasonable time in which to respond to an amendment.

{¶25} Juv.R. 22(B) is similar to Crim.R. 7(D) in that the latter rule provides, in relevant part, that a charging instrument may be amended "in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." In the context

11

of criminal charges, "[o]rdinarily, precise times and dates are not essential elements of offenses." *State v. Scott*, 12th Dist. Clermont Nos. CA2019-07-051 & CA2019-07-052, 2020-Ohio-3230, 155 N.E.3d 56, ¶ 39, citing *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). "Some Ohio courts have also recognized that '[t]he State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment.'" *Scott* at ¶ 39, quoting *State v. Miller*, 5th Dist. Licking No. 2006CA00030, 2006-Ohio-6236, ¶ 22 (upholding the defendant's conviction where the victim's testimony provided competent, credible evidence from which the jury could find the defendant raped the victim on a date reasonably near the date claimed in the indictment); *Tesca v. State*, 108 Ohio St. 287, 140 N.E. 629 (1923), paragraph one of the syllabus ("It is sufficient to prove the alleged offense at or about the time charged.").

{¶26} "In sexual abuse cases involving children, * * * it may be impossible to provide a specific date in the indictment." *Scott* at ¶ 40, citing *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 & CA2013-07-113, 2014-Ohio-3449, ¶ 36. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." *Scott* at ¶ 40, citing *Vunda* at ¶ 36. "'"An allowance for reasonableness and inexactitude must be made for such cases."'" *Scott* at ¶ 40, quoting *State v. Birt*, 2013-Ohio-1379, 5 N.E.3d 1000, ¶ 32 (12th Dist.), quoting *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 12. Therefore, courts have held that "failure to prove an offense occurred during the time frame alleged in the indictment is only fatal to the state's claim where an accused would be prejudiced and otherwise denied a fair trial if the state were not required

12

to establish that the date of an offense occurred within the identified range." *Scott* at ¶ 44.

**{¶27}** Here, the complaint was amended to alter the time frame of the alleged offenses, initially alleged to have occurred between April 1, 2020 to May 21, 2020, to cover the period of August 1, 2019 to May 21, 2020. J.D. argues he was prejudiced by the amendment because he relied on his alibi during his defense, and the state did not move to amend the complaint until after the close of J.D.'s case. Again, as J.D. did not raise this argument in an objection to the magistrate's decision, we review this argument in conjunction with J.D.'s argument regarding ineffective assistance of counsel.

**{¶28}** As may be expected where the state has alleged offenses occurred over a period of time, as opposed to a particular date, J.D.'s notice did not provide specifics as to his whereabouts between April 1, 2020 and May 21, 2020, and instead contained a statement that he was not at his grandmother's house during that time period. The testimony at trial established J.D.'s specific location only for the date of May 17, 2020, as his mother testified that he was at a friend's house that day and authenticated pictures and texts reflecting his presence at his friend's house. However, the state's evidence indicated that May 17, 2020 was the date that the victim disclosed the abuse to his maternal great-grandmother and his mother. Accordingly, the testimony established an alibi only as to a date that the state acknowledged the offenses did *not* occur.

**{¶29}** Nonetheless, regardless of the notice of alibi, we note that a significant portion of J.D.'s case focused on him not being present at the grandmother's house in 2020, and therefore, we review whether he was prejudiced or otherwise denied a fair hearing. *Scott*, 2020-Ohio-3230, at ¶ 40.

13

Case No. 2021-L-126

**{¶30}** Although J.D.'s case focused on him not being present at the grandmother's home in 2020, J.D. also maintained that he never inappropriately touched the victim, that he was rarely at the grandmother's house in 2019, that he had last seen the victim at the grandmother's house in 2018 after the telephone incident, and when he did stay overnight, he did not sleep in the same room as the other children. If believed, J.D.'s testimony would have exonerated him regardless of the dates contained in the complaint. *See In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, *et seq.*, 2011-Ohio-6845, ¶ 59. Moreover, given J.D.'s testimony and the extended time-period alleged in the amendment, we cannot discern how, if additional time had been given for the defense to prepare, J.D. could have presented further evidence of an alibi.

**{¶31}** We cannot say that J.D. was prejudiced by the amendment, which expanded the time frame of the offenses to include a time frame to which J.D. testified. Accordingly, J.D. has not established that counsel was ineffective for failing to raise this issue in an objection to a magistrate's decision, as he has not established that the outcome would have been different save for the alleged deficient performance. *See Strickland*, 466 U.S. at 687.

**{¶32}** J.D.'s second argument pertains to the admission of testimony of J.D.'s therapist as an expert. Pursuant to Evid.R. 702:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

14

Case No. 2021-L-126

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶33} In support of his argument that the therapist's testimony should have been excluded, J.D. relies on cases that relate to an expert testifying to the truthfulness of a victim's testimony. In *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, ¶ 65, 67, we explained:

> [In *State v. Boston*, t]he Supreme Court held that "the use of expert testimony is perfectly proper [in cases involving alleged child abuse] and such experts are not limited to just persons with scientific or technical knowledge but also include other persons with 'specialized knowledge' gained through experience, training or education." [*State v. Boston*, 46 Ohio St.3d 108, 126, 545 N.E.2d 1220 (1989) overruled, in part, on other grounds by *State v. Muttart*, 116 Ohio St.3d 5, 875 N.E.2d 944, 2007-Ohio-5267]. "[A]n expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." *Id.* at 128, 875 N.E.2d 944. However, "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus.
>
> * * *
>
> In a latter decision, the Ohio Supreme Court affirmed its position that "[i]t *is* permissible * * * for an expert to convey this belief[, i.e., that the child was actually abused,] to the jury." [(Emphasis sic.) *State v. Stowers*, 81 Ohio St.3d 260, 261,

15

690 N.E.2d 881 (1998)]. In *Stowers*, the Court recognized a distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." [(Emphasis sic.) *Id.* at 262]. While the former is the sort of testimony prohibited by *Boston*, the other sort, "which is additional support for the truth of *the facts testified to* by the child, or which assists the fact finder in assessing the child's veracity," does not violate this prohibition. [(Emphasis sic.) *Id.* at 262-263].

{¶34} Here, the therapist diagnosed the victim with post-traumatic stress disorder ("PTSD") consistent with a history of sexual abuse. J.D. takes issue with the therapist's failure to testify how many children he has helped with PTSD, the causes of PTSD, and how the symptoms of PTSD manifest, and he appears to argue that the court erred in qualifying the therapist as an expert to diagnose PTSD and to opine on whether the diagnosis is consistent with a history of sexual abuse. However, as set forth above, experts may be qualified through "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). Here, the therapist testified as to his experience and education in the field of mental health, which included extensive experience counseling children and adolescents and individuals who have reported experiencing trauma. In rendering the PTSD diagnosis here, the therapist indicated that he performed an intake of the victim and consulted the DSM-5. The therapist further indicated that he spoke with the victim's mother about symptoms from which the child was suffering which were relevant to the PTSD diagnosis, such as his difficulty sleeping, recurring dreams/memories of the incidents, and difficulty interacting with children of J.D.'s age. Accordingly, the foundation of the therapist's opinion was not based solely on the victim's testimony. *See Britta* at ¶ 70. Based upon the foregoing,

16

Case No. 2021-L-126

the trial court did not err in qualifying the therapist as an expert, and this is not a case of impermissible vouching as discussed in *Boston* and *Stowers*.

{¶35} Therefore, J.D.'s challenge to the therapist's testimony lacks merit. Accordingly, we cannot say that trial counsel was ineffective for failing to object to the magistrate's decision on this basis. *See Strickland*, 466 U.S. at 687.

{¶36} With respect to J.D.'s arguments regarding the sufficiency and manifest weight of the evidence,

> A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶ 18. Due to the "'inherently criminal aspects' of delinquency proceedings * * * " claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re L.F.*, 9th Dist. Lorain No. 10CA09880, 2012-Ohio-02, ¶ 6; *In re R.S.* at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989).

*In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 47. Although J.D. frames his third assigned error in terms of whether the court erred in denying his motion for "acquittal," he recognizes in the body of his brief that the criminal rules do not apply to this matter, but, regardless, the issues of sufficiency and manifest weight of the evidence applicable to juvenile delinquency cases are subject to the same standard of review as in criminal cases.

{¶37} In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution. *State v. Smith*, 80

17

Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) *Thompkins* at 386.

{¶38} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.

> * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

(Emphasis deleted.) *Thompkins* at 387, quoting *Black's* at 1594.

{¶39} In determining whether a conviction is against the weight of the evidence, this court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A determination that a defendant's conviction is supported by the weight of the evidence

18

includes a conclusion that sufficient evidence supports the conviction. (Citation omitted.) *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

**{¶40}** In support of his third and fourth assigned errors, J.D. maintains the following: the testimony is inconsistent as to where the offenses occurred, there is no testimony as to when the offenses occurred, there was no rape kit performed, there was no physical evidence of penetration, there was no corroborating evidence of the victim's black eye, and the victim's testimony was not credible.

**{¶41}** We recognize that at times during his testimony, the victim appeared to have difficulty or reluctance in relaying the facts constituting the offenses and determining when the offenses occurred. Despite this and the lack of corroborating physical evidence of sexual conduct and contact, it was the province of the trial court as finder of fact to determine the victim's credibility. Here, the testimony elicited on behalf of the state indicated that on numerous occasions, J.D. inserted his penis in the victim's buttocks while at their grandmother's house overnight. The victim indicated that J.D. had threatened him with harm and that J.D. had given him a black eye. There is no dispute that the victim is younger and smaller than J.D., nor is there any dispute that the victim is autistic.

**{¶42}** This is not the extraordinary case where the trial court "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387. Accordingly, J.D.'s challenges to the weight and sufficiency of the evidence lack merit. Consequently, we cannot say that counsel was ineffective for failing to raise these issues in an objection to the magistrate's decision. *See Strickland*, 466 U.S. at 487.

19

Case No. 2021-L-126

{¶43} Therefore, for the reasons set forth above, J.D.'s first five assigned errors lack merit.

{¶44} In his sixth assigned error, J.D. argues:

{¶45} "[6.] The trial court erred to the preju[dice] of J.D. by failing to merge counts 1 through 3 at disposition."

{¶46} To protect a juvenile's right against double jeopardy, the merger analysis established by the Ohio Supreme Court with respect to application of R.C. 2941.25 applies in juvenile delinquency proceedings. *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 7.

{¶47} R.C. 2941.25 governs the imposition of punishment for multiple offenses:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶48} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

20

Case No. 2021-L-126

{¶49} Here, the victim's testimony indicated that that J.D. inserted his penis in the victim's buttocks "every night" at the grandmother's house. The record supports at least three separate instances of rape and gross sexual imposition.

{¶50} Accordingly, the trial court did not err by failing to merge the counts, and J.D.'s sixth assigned error lacks merit.

{¶51} The judgment of the trial court is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.