[Cite as *State v. Victor*, 2022-Ohio-4159.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

PHILLIP JAMES VICTOR,

        Defendant-Appellant.

CASE NO. 2021-A-0046

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00648

**O P I N I O N**

Decided: November 21, 2022
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Jessica Fross*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward M. Heindel*, 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}    Defendant-appellant, Phillip James Victor, appeals from his convictions and sentence for Rape and Gross Sexual Imposition in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2}    On December 28, 2020, the Ashtabula County Grand Jury issued an Indictment, charging Victor with one count of Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b); and three counts of Gross Sexual Imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4).

{¶3}    A jury trial was held on November 2 and 3, 2021. The following pertinent

testimony was presented:

{¶4} H.K., who was 17 at the time of her testimony and born in April 2004, testified that Victor had been her mother's boyfriend and watched H.K. at his residence while her mother was at work in 2012 to 2013. At that time, when she was around the ages of eight and nine, she alleged that Victor sexually abused her. While the two were laying on Victor's bed and watching movies, he would pull down her pants and lick her vaginal area. Victor used both his tongue and fingers to touch that area. During this time, he did not touch himself or remove his clothes. H.K. testified that this happened "quite often" and "probably right around" ten times while she was eight to nine years old. She described it as occurring in the evening before her mother would come to pick her up and that these incidents took place around October 2012.

{¶5} H.K. testified as to one instance, "probably in 2013" where "it was like what usually happens" but he then pulled down his pants and had intercourse with her. She believed it happened sometime a little bit after her ninth birthday. After this occurred, they did not talk and were silent while watching a movie.

{¶6} After the instances of sexual abuse, H.K. no longer wanted to spend time with Victor. Her mother and Victor later broke up. H.K. began to experience anxiety and nightmares as well as difficulty sleeping. She was scared to tell anyone what had occurred because she did not know what would happen and was afraid she would get in trouble. Several years later, in the summer of 2020, while with her mother and a friend, her mother inquired whether she was a virgin. H.K. stated no, and told her mother what happened with Victor. She then told her dad and the police.

2

{¶7} Heather Stearns, H.K.'s mother, testified that she began dating Victor in 2011 and they were in a relationship for about two years. H.K. would stay with Victor on days when Stearns was working. They ended their relationship in 2013 because they fought too much. Stearns testified that, around that period of time, H.K. was experiencing physical health problems that were attributed to anxiety and was placed in counseling. Stearns provided testimony similar to H.K.'s regarding the circumstances under which the abuse was disclosed, wherein they were discussing virginity and H.K. stated "your ex took that from me." H.K. disclosed the incident to police about a week and a half later when an officer H.K. was comfortable with was available. Stearns testified that while she was dating Victor, H.K. was always excited to see him and liked spending time with him.

{¶8} Michelle Flick, a coordinator and forensic interviewer for the Ashtabula Area Child Advocacy Center, interviewed H.K. in September 2020, during which time H.K. disclosed sexual abuse by Victor. Flick testified that it was not unusual for children to disclose abuse several years after the fact.

{¶9} The jury found Victor guilty of one count of Rape and three counts of Gross Sexual Imposition as charged in the indictment. A sentencing hearing was held on December 13, 2021. The parties stipulated that one count of Gross Sexual Imposition merged into the Rape count. The court sentenced Victor to serve 15 years to life for the Rape conviction and five years for each count of Gross Sexual Imposition, all to be served consecutively for a total term of 25 years to life in prison.

{¶10} Victor timely appeals and raises the following assignments of error:

{¶11} "[1.] The convictions were not supported by sufficient evidence.

{¶12} "[2.] The convictions for rape and gross sexual imposition were against the

3

manifest weight of the evidence.

{¶13} "[3.] The trial court erred when it did not find that the rape and gross sexual imposition charges are all allied offenses; or that the two gross sexual imposition charges are allied offenses.

{¶14} "[4.] The findings that were made to impose consecutive sentences were not supported in the record."

{¶15} We will address Victor's first two assignments of error jointly, as they relate to the weight and sufficiency of the evidence.

{¶16} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary (6 Ed.1990), 1433. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the

4

reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶18} To convict Victor of Rape, the State was required to prove, beyond a reasonable doubt, that he did "engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age * * *." R.C. 2907.02(A)(1)(b). To convict him of Gross Sexual Imposition, the State was required to prove he had "sexual contact with another, * * * when * * * [t]he other person * * * is less than thirteen years of age * * *." R.C. 2907.05(A)(4).

{¶19} In his first assignment of error, Victor raises various arguments supporting his contention that the elements of the charges for which he was convicted were not proven beyond a reasonable doubt. First, he argues that the separate convictions for Gross Sexual Imposition were improper because the victim did not testify as to multiple distinct instances of sexual contact or identify the dates on which the contact occurred.

{¶20} While H.K. did testify as to the Gross Sexual Imposition in a blanket manner by giving general testimony about the Victor's conduct and stating that it occurred on several occasions, her testimony was clear that this conduct did occur more than once. Her testimony regarding his actions demonstrated that Victor had sexual contact with her on multiple occasions, up to ten times, when she was less than thirteen years old.

5

Whether the level of detail provided by her testimony satisfied the trier of fact as to the credibility of her allegations is not an issue of sufficiency. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79 (an evaluation of a witness' credibility, "is not proper on review for evidentiary sufficiency").

{¶21} Further, the lack of specificity as to the dates on which this conduct occurred does not warrant a finding of insufficiency. This court has repeatedly observed, in the context of motions to dismiss an indictment, that the "precise date and time of an alleged offense in an indictment are immaterial to the essential elements of an offense; therefore, the failure to provide an exact date and time will not by itself warrant dismissal of a charge." (Citation omitted.) *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, et al., 2011-Ohio-6845, ¶ 53 ("the specific date of sexual conduct is not an element of rape"); *Matter of J.D.*, 11th Dist. Lake No. 2021-L-126, 2022-Ohio-2334, ¶ 25 ("[o]rdinarily, precise times and dates are not essential elements of offenses") (citation omitted). "[I]n cases involving alleged sexual misconduct with young children, this court and other courts have held that it is not mandatory for the state to provide precise dates and times because young children are usually unable to remember such specific information and such incidents usually take place over an extended span of time." *State v. LaTorres*, 11th Dist. Ashtabula Nos. 2000-A-0060 and 2000-A-0062, 2001 WL 901045, *4 (Aug. 10, 2001). "[I]f the evidence supports a finding that the defendant was alone with the victim during the relevant time frame and the defense is that the sexual abuse never occurred," rather than an alibi defense, "the inability to identify a specific date does not require reversal of a conviction." *Id.*

{¶22} Challenges to the sufficiency of the evidence have been rejected in similar

6

circumstances to those present here. In *State v. Miller*, 5th Dist. Licking No. 2006CA00030, 2006-Ohio-6236, ¶ 23, the court rejected a challenge to the sufficiency of the evidence for a Rape charge; since time was not an essential element, "it was sufficient for the State to prove the offense occurred on a date reasonably near the date claimed." *Also State v. Scott*, 2020-Ohio-3230, 155 N.E.3d 56, ¶ 40-46 (12th Dist.) (rejecting the defendant's sufficiency challenge since the precise date the Gross Sexual Imposition occurred was not necessary to prove the elements of the offense nor was his defense prejudiced by uncertainty on the date it occurred).

{¶23} Here, the indictment set forth a timeframe for each offense, throughout 2012 to 2013. H.K. was consistently alone with Victor on various dates during those timeframes. While she did not recall the exact dates, her testimony demonstrated the age she was during the offenses, which is a key issue in this type of case, and the exact dates were not necessary since Victor did not attempt to mount an alibi defense. *LaTorres* at *4.

{¶24} Victor also argues that no testimony was presented regarding arousal or gratification and no evidence that he reacted in a manner consistent with arousal.

{¶25} To prove the sexual conduct element of Gross Sexual Imposition, it is necessary to demonstrate that the touching of the victim occurred "for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶26} "A sexual purpose can be inferred from the nature of the act itself if a reasonable person would find that act sexually stimulating to either the offender or the victim." (Citation omitted.) *State v. Bussle*, 11th Dist. Portage No. 2016-P-0026, 2017-Ohio-4045, ¶ 36. "The relevant inquiry is would an ordinary prudent person or a

7

reasonable person sitting as a juror perceive from the defendant's actions, and all of the surrounding facts and circumstances, that *the defendant's purpose* or specific intention was arousal or gratification of sexual desire?" (Citation omitted.) (Emphasis sic.) *Id.*

**{¶27}** Regardless of whether Victor showed outward signs of being sexually aroused, a reasonable person would conclude that his purpose or intent was arousal or sexual gratification, either for himself or the victim. He touched the victim, a young child, who was alone with him while lying in bed, on several occasions, subsequently culminating this pattern of sexual abuse by committing an act of sexual intercourse with her. A finding that sexual gratification occurred is not supported by insufficient evidence in these circumstances. *See State v. Breland*, 11th Dist. Ashtabula No. 2003-A-0066, 2004-Ohio-7238, ¶ 26 ("reasonable jurors could infer that appellant's placing of his hand underneath the victim's underwear and inside her, as well as feeling her private area, was sexually stimulating").

**{¶28}** As to the Rape, Victor argues that there were no corroborating witnesses, medical records or evidence other than H.K.'s testimony, observing that the allegations were made nine years after the incidents and her statements could have been the result of pressure from loved ones and interview techniques.

**{¶29}** This court has explained that physical and medical evidence are not necessary to support a guilty verdict for Rape or Gross Sexual Imposition and that the "sole testimony of the victim can support a conviction." *State v. Waskelis*, 11th Dist. Portage No. 2011-P-0035, 2012-Ohio-3030, ¶ 46; *N.Z.*, 2011-Ohio-6845, at ¶ 81-85. H.K.'s testimony established the elements necessary to support the convictions beyond a reasonable doubt. Issues relating to the credibility of her testimony were for the jury to

8

determine.  *Waskelis* at ¶ 44.

{¶30}  While Victor argues that there were reasons H.K. may have lied, such as pressure or use of certain interview techniques, there is nothing in the record to support a conclusion that she was improperly pressured or coerced to make statements that were untruthful.  Further, while he emphasizes that the disclosure occurred nine years after the sexual assault, "[d]elayed disclosure of the incidents does not equate to insufficient evidence as to that charge but rather goes to the credibility of the witnesses and the manifest weight of the evidence."  *State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶ 6.

{¶31}  In his second assignment of error, Victor similarly argues the convictions are against the weight of the evidence due to concerns with H.K.'s testimony, alleging that they were "fabricated somehow in her mind."  He contends that the allegations are "suspect" in that they were made only after her mother's relationship with Victor ended and were disclosed by "blurting [them] out in front of others."

{¶32}  The issues raised here primarily relate to the credibility of H.K., an issue for the trier of fact as discussed above.  Her testimony was consistent with the disclosures she made regarding the abuse.  The testimony was consistent with the time and circumstances under which Victor had watched her while her mother was working. Nothing specific in the record shows her testimony was "fabricated."  Further, as to the delayed disclosure, which H.K. described arose due to her fear of what might occur if she disclosed, "it is within the province of the jury to parse out the credible portions of [the victim's] testimony, principally as it pertained to her ability to recall certain events and her delayed disclosure from what is not credible."  *State v. Chute*, 3d Dist. Union No. 14-22-

9

02, 2022-Ohio-2722, ¶ 32.

{¶33} Victor observes that H.K. only disclosed the abuse after her mother's relationship with him ended and "clearly, there was animosity there." However, the abuse was disclosed several years after the breakup and it is unclear what "animosity" is referenced. The relationship ended, according to H.K.'s mother, because the two were fighting a lot but she did not indicate that it ended in a manner that would cause animosity, particularly on H.K.'s behalf. It is unclear why a relationship ending in 2013 would lead H.K. to falsely disclose abuse in 2020. The only "animosity" present in the record, according to H.K.'s testimony, arose due to Victor's abuse of her, not a breakup that occurred seven years prior.

{¶34} The first and second assignments of error are without merit.

{¶35} In his third assignment of error, Victor argues that the charges for Rape and Gross Sexual Imposition should have merged and, alternatively, the Gross Sexual Imposition charges should have merged with each other. He argues that the Rape and Gross Sexual Imposition were "simultaneous acts" as H.K. made one specific allegation about Rape and "some very vague allegations about gross sexual imposition." He argues that the Gross Sexual Imposition charges cannot be separated into distinct acts because each incident described by H.K. "is not particularly detailed" and the dates and circumstances were vague.

{¶36} R.C. 2941.25 governs the imposition of punishment for multiple offenses:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

10

Case No. 2021-A-0046

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶37} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

{¶38} "[G]ross sexual imposition and rape may, depending on the circumstances, be allied offenses of similar import. For instance, it is well-established that gross sexual imposition is a lesser included offense of rape. * * * Accordingly, under R.C. 2941.25, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct." *State v. St. John*, 11th Dist. Lake No. 2015-L-133, 2017-Ohio-4043, ¶ 18, citing *State v. Hay*, 3d Dist. Union No. 14-2000-24, 2000 WL 1852725, *3 (Dec. 19, 2000).

{¶39} As an initial matter, even to the extent that it could be argued that the Rape offense occurred during an act of Gross Sexual Imposition on a single day (H.K. indicated that the rape occurred after the acts he "usually" performed) and it may be unclear to what

11

extent they included separate acts, the court merged the Rape conviction with one count of Gross Sexual Imposition, removing such concern.

{¶40} As to the remaining counts of Gross Sexual Imposition, they resulted from multiple incidents/acts of touching the victim and occurred on separate days, a fact demonstrated by the separate time periods in the indictment and the corresponding testimony regarding the Gross Sexual Imposition occurring multiple times. As such, they would not merge with each other or with the Rape conviction since they were committed separately. *See J.D.*, 2022-Ohio-2334, at ¶ 49 (where the victim's testimony indicated that the defendant conducted sexual acts "every night," supporting separate instances of Rape and Gross Sexual Imposition, the offenses did not merge). The fact that the testimony was not "particularly detailed" does not mean the offenses should merge where it was demonstrated there were separate occurrences.

{¶41} The third assignment of error is without merit.

{¶42} In his fourth assignment of error, Victor argues that the consecutive sentencing findings were not supported by the record given his lack of a sexual abuse related criminal history or statements by the victim indicating she suffered great harm.

{¶43} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). With respect to consecutive sentences, a reviewing court may vacate the sentence and remand for resentencing "if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14." *Id.* Under R.C. 2929.14(C)(4), a sentencing court is required to find that consecutive sentences are "necessary to protect the public from future crime

12

Case No. 2021-A-0046

or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and that one of the circumstances described in subdivision (a) to (c) is present. Relevant to the present matter, subdivisions (b) and (c) require findings that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct" which caused harm so great a single prison term would not reflect the seriousness of the conduct; and "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." To impose consecutive terms, the court "is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶44} Here, the court made each of the required findings for ordering consecutive sentences enumerated above, including findings under both subdivisions (b) and (c). Victor does not dispute that the court made the required findings but argues that they are not supported by the record. *See Id.* at ¶ 29 ("as long as the reviewing court can * * * determine that the record contains evidence to support the findings, consecutive sentences should be upheld").

{¶45} Victor argues that the finding regarding "great or unusual" harm is unsupported because "H.K. did not testify about any long-term effects of Victor's actions," was not physically injured, has not been "so emotionally harmed that she just can't continue with life," and the record did not demonstrate "nightmares, an inability to sleep or work, or engage in any normal trusting relationships."

13

Case No. 2021-A-0046

{¶46} Contrary to Victor's argument, H.K. specifically testified that she had difficulty sleeping and nightmares after the time period when the abuse occurred. She testified regarding anxiety and her mother corroborated that she had physical health problems attributed to anxiety and sought counseling and medication. The fact that H.K. is able to "continue with life" does not negate any suffering she experienced. From these facts, the court could determine that the abuse had a significant impact on her life and did not err in making this consecutive sentencing finding. This finding alone is sufficient to support the consecutive sentence, since "the plain language of the statute requires that only one of these three elements [R.C. 2929.14(C)(4)(a) through (c)] need be found, which is evident from the statute's use of the word 'any.'" *State v. Wauer*, 11th Dist. Trumbull No. 2016-T-0043, 2017-Ohio-1337, ¶ 27.

{¶47} Nonetheless, the lower court also made the finding that Victor's history of criminal offenses warrants consecutive sentences to protect the public. Victor argues that his prior offenses were not sex crimes but it is not required that all offenses be of the same character to find a danger to the public. His multiple felony offenses, including the present sexual assault of a child over an extended period of time, supported the trial court's finding. We also find his argument that the consecutive sentences were an "overreaction," supported by his observation that the rape was not "forceful," to be unconvincing. Victor was convicted of committing the Rape and Gross Sexual Imposition of an eight- and nine-year-old victim, resulting in what she described as psychological harm.

{¶48} The fourth assignment of error is without merit.

{¶49} For the foregoing reasons, Victor's convictions and sentence for Rape and

14

Gross Sexual Imposition in the Ashtabula County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.


MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-A-0046