[Cite as *State v. Huertas-Alicia*, 2024-Ohio-2214.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JOSUE HUERTAS-ALICIA,

        Defendant-Appellant.

**CASE NO. 2022-A-0109**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00251

---

**O P I N I O N**

Decided: June 10, 2024
Judgment: Affirmed

---

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, *Christine Davis*, and *Calvin Nguyen*, Assistant Prosecutors, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Sarah G. Ogden*, Megargel, Eskridge, & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}   Appellant, Josue Huertas-Alicia ("Mr. Huertas-Alicia"), appeals from the judgment of the Ashtabula County Court of Common Pleas that sentenced him to five, consecutive sentences of 15 years to life imprisonment after a jury found him guilty of five counts of rape of a minor child under 10 years of age.

{¶2}   Mr. Huertas-Alicia raises two assignments of error on review, contending the state failed to introduce sufficient evidence to support five convictions for rape, and his convictions are against the manifest weight of the evidence.

{¶3} After a careful review of the record and pertinent law, we find Mr. Huertas-Alicia's assignments of error to be without merit.

{¶4} First, this court notes that a complete review of the state's evidence reveals that while the victim's testimony was general at times, giving only a general description of the type of incidents and what occurred, there is no doubt from her testimony that inappropriate sexual conduct occurred multiple times over a long period of time. This court further finds that the child-victim's descriptions regarding the sexual conduct, i.e., "penetration," were specific enough. In sum, the state introduced sufficient evidence on each element of the offenses from which a jury could find Mr. Huertas-Alicia guilty of five counts of child rape.

{¶5} Second, this is not the "exceptional case" in which the evidence weighs heavily against Mr. Huertas-Alicia's convictions. As we often find in these types of cases, there is scant evidence besides the testimony of the victim versus the testimony of the defendant. Simply because the jury chose to believe the minor victim's version of events does not equate to a finding that the manifest weight of the evidence does not support the jury's verdict.

{¶6} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶7} In May 2021, the Ashtabula County Grand Jury indicted Mr. Huertas-Alicia on five counts of rape, first-degree felonies, in violation of R.C. 2907.02(A)(1)(b) and 2907.02(B), with a specification that the victim was under ten years of age.[1]

---

1 The indictment reflects that counts one through four are identical. In particular, counts one through four describe the same time-period, have the same subsection of R.C. 2907.02(A)(1)(b), and sexual conduct

**The Jury Trial**

**{¶8}** In September 2022, the case proceeded to a four-day jury trial.

### *State's Case-in-Chief*

**{¶9}** The state presented five witnesses, B.M., the victim (d.o.b. 2/2/2013), Zuleika Mendez ("Ms. Mendez"), B.M.'s mother; Dr. Paul McPherson ("Dr. McPherson"), a pediatrician who evaluated B.M. for the Ashtabula Child Advocacy Center (the "ACAC"); City of Ashtabula Detective Wesley Burns ("Det. Burns"); and Matthew Wunsch ("Mr. Wunsch"), B.M.'s ACAC intake caseworker.

**{¶10}** The state's evidence revealed that Mr. Huertas-Alicia and Ms. Mendez met when Ms. Mendez was pregnant with B.M. They started dating several months after B.M. was born and moved in together. Ms. Mendez started working in 2017. They would alternate shifts so one of them would always be with B.M. and Ms. Mendez's son (B.M.'s older brother). Since Ms. Mendez typically worked the first shift, Mr. Huertas-Alicia would watch B.M. in the night and in the morning. In 2019, their relationship ended, and Mr. Huertas-Alicia moved out. He continued to watch B.M. for Ms. Mendez until January 2021.

**{¶11}** On January 2, 2021, Ms. Mendez and B.M. were talking in Ms. Mendez's room. Ms. Mendez told B.M. not to let anyone touch her. B.M., who was lying on her mother's bed, brought her legs together. This led to a conversation in which B.M. disclosed to her mother that Mr. Huertas-Alicia had inappropriately touched her on numerous occasions.

---

without specifying the nature of the sexual conduct. Other than setting forth a different time period of the offense, count five is the same as the prior counts.

Case No. 2022-A-0109

{¶12} On January 5, 2021, Ms. Mendez took B.M. to the City of Ashtabula police department to report the incidents. They met with Det. Burns, who scheduled a forensic interview/evaluation at the ACAC for B.M.

{¶13} B.M. was interviewed by ACAC forensic interviewer, Michelle Flick ("Ms. Flick") two days later. Ms. Flick was unavailable to testify at the jury trial because she has since relocated to Florida. Det. Burns and Mr. Wunsch witnessed the interview, watching in a separate room without B.M.'s knowledge.

{¶14} When Det. Burns completed his investigation, he submitted seven incidents of rape for review, five of which were charged. Based on his investigation, these incidents started when B.M. was four years old and continued until B.M. was seven years old. They occurred at B.M.'s home, in her room and in her mother's room, and at Mr. Huertas-Alicia's apartment that he shared with his brother after he and Ms. Mendez ended their relationship.

{¶15} B.M. testified that she called Mr. Huertas-Alicia "wolf" because "he's mean." She remembered being alone with Mr. Huertas-Alicia when her mom had to work. B.M. confirmed some drawings she drew at the ACAC interview. She was drawing "what [Mr. Huertas-Alicia] did to her", and indicated one of the drawings depicted Mr. Huertas-Alicia's genitals and "me and the wolf." She remembers laying down and feeling "something hard and squishy that had hair," "going in and out" of her buttocks, this happened "a lot of times," "in [her] house and at the wolf's house," "in [her] room and Mommy's room," "in the night and sometimes in the morning."

{¶16} When asked to describe how this usually happened, B.M. testified that "it happens every time my Mommy goes to work or when I stay at his house," "he gave me

4

gummies, and then I – and then I fall asleep; and then when he goes to sleep, he does it to me." She further testified that he would put "something hard and squishy, that had hair on it" "in her butt," which would wake her up. "He would do it every night." When she woke up, her pants would be down. She would tell him to stop, "but he wouldn't stop," and she "needed to use the bathroom." Sometimes, the wolf would talk to her about these incidents, telling her that "no one is going to believe you."

{¶17} B.M. described another incident indicating anal sex, where she woke up and told Mr. Huertas-Alicia to stop but he "wouldn't stop." "He put something hard and squishy that had hair in my butt." B.M. recounted another incident where she woke up with Mr. Huertas-Alicia facing her with his genitals on her "privates." She said Mr. Huertas-Alicia touched her "private area." In another incident, B.M. recalled Mr. Huertas-Alicia placing his genitals in her mouth. She had the blanket over her head and was sleeping, facing him. She felt his penis in her mouth, and she woke up. She took the blanket off and went to the bathroom. She "thinks" she touched his genitals but could not remember.

{¶18} Dr. McPherson is a pediatrician with a specialty in child abuse pediatrics at Akron Children's Hospital. In October 2021, he evaluated B.M. for ACAC, who provided him with her medical records, a recording of the interview, and a video of B.M.'s anal/genital exam.

{¶19} In his report, Dr. McPherson concluded that B.M. "made a disclosure of sexual contact, made from a child's perspective using terminology consistent with the child's developmental abilities. The patient provided contextual and * * * verbal interactions. The patient made statements consistent with attempted drug facilitated sexual abuse and exposure to ejacul[ation]." At the time of her physical exam, B.M.

5

showed no abnormal findings. This finding was not unusual since "90% of children undergoing these types of exams have normal or nonspecific exams and this does not negate B.M.'s disclosure of inappropriate sexual contact."

**{¶20}** Dr. McPherson explained to the jury that he included this in his report because many people erroneously believe one can tell by looking at a child's genitals that she or he has been touched. Further, anal penetration does not necessarily result in permanent injury. Lastly, he informed the jury that delayed reporting in children is very common. He recommended evaluation and treatment by a medical health professional.

**{¶21}** In an effort to admit Ms. Flick's testimony into evidence via the video of the forensic interview, the prosecutor conceded that he "could not get all five counts testified by the young lady [B.M.]" before she grew tired. No additional evidence was offered to bolster any of the rape counts.

**{¶22}** At the close of the state's case-in-chief, defense counsel made a Crim.R. 29 motion challenging the sufficiency of the evidence. The defense contended the state presented insufficient evidence to sustain any one of the five counts rape. The state responded that there was evidence on each element of the offenses, i.e., venue, B.M.'s age, and sexual conduct.

**{¶23}** The court denied the motion, finding there was sufficient evidence from which a jury could find Mr. Huertas-Alicia guilty of five instances of child rape. The court reviewed that there were multiple witnesses, including the victim who testified sexual conduct occurred multiple times in multiple places.

### The Defense

**{¶24}** Mr. Huertas-Alicia was the sole witness for the defense. He testified that he lived with Ms. Mendez and her two children for approximately seven years, moving in with them shortly after B.M.'s birth. He considered B.M. his daughter, and he "raised her as my own." B.M. referred to him as "Dad." He continued to stay in contact with Ms. Mendez after the relationship ended and he would watch B.M. while Ms. Mendez was at work. B.M. would stay at his apartment during the week throughout the time of the COVID-19 pandemic. He denied touching B.M. inappropriately and the allegations against him.

**{¶25}** At the close of the defense's case, defense counsel made a renewed Crim.R. 29 motion challenging the sufficiency of the evidence. The trial court denied the motion.

### Jury Verdict and Sentencing

**{¶26}** The jury found Mr. Huertas-Alicia guilty on all five counts of rape, with a finding that the victim was under the age of ten.

**{¶27}** In October 2022, the trial court held a sentencing hearing, sentencing Mr. Huertas-Alicia to five, consecutive terms of 15 years to life in prison, and found he is a Tier III Sex Offender.

**{¶28}** Mr. Huertas-Alicia raises two assignments of error for our review:

**{¶29}** "[1.] The trial court erred by denying appellant's Crim.R. 29 motion as the State failed to provide sufficient evidence to support five convictions of rape.

**{¶30}** "[2.] Appellant's convictions were against the manifest weight of the evidence."

7

Case No. 2022-A-0109

**Sufficiency of the Evidence**

{¶31} In his first assignment of error, Mr. Huertas-Alicia contends the state failed to introduce sufficient evidence to support five instances of rape. He argues that the state introduced, at most, evidence of three specific incidents, but that only one incident suggested sexual conduct that involved penetration.

{¶32} Crim.R. 29(A) provides "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶33} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most

8

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶34} Mr. Huertas-Alicia was convicted of five counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides, in pertinent part, that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶35} "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶36} At the outset, we note the difficulties inherent in prosecuting cases of child abuse, especially cases involving a pattern of abuse occurring over years involving persons who reside in the same household. In many cases, the victims are young and unable to remember exact dates and times of specific events, particularly where the abuse is alleged to have occurred over an extended period of time, such as in the case at bar. *See State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994). Further, the exact date and time is not an essential element of these offenses. *State v. Adams,* 6th Dist. ErieNo. E-03-042, 2004-Ohio-4673, ¶ 14. Thus, a reasonable degree of latitude and inexactitude is allowed with respect to the timing of the offense. It is sufficient to prove that the alleged offense occurred at or about the time charged. *State*

9

Case No. 2022-A-0109

*v. Reinhardt,* 10th Dist. Franklin App. No. 04AP-116, 2004-Ohio-6443, ¶ 20, citing *State v. Madden*, 15 Ohio App.3d 130, 131, 472 N.E.2d 1126 (1984).

**{¶37}** A review of the state's evidence reveals that B.M. testified that multiple incidents occurred, multiple times, at various places (her home and Mr. Huertas-Alicia's apartment) in the night and in the morning over a span of three years. She described the pattern of Mr. Huertas-Alicia's conduct. He would give her a sleep-aid and he would wait until she fell asleep to engage in sexual conduct. She would typically awaken during the act. She testified that he would put his genitals "in" her buttocks and move "in and out." She also described three more specific incidents of anal sex, fellatio, and vaginal sexual contact.

**{¶38}** Further, the testimony from the other witnesses corroborated B.M.'s story, which was consistent from the time she first disclosed the incidents to her mother and at her ACAC interview to the time she testified at the jury trial. Ms. Mendez testified that Mr. Huertas-Alicia was B.M.'s only other caregiver, and he watched B.M. in the night and the morning. Det. Wunsch testified he found at least seven specific incidents from his investigation that occurred when B.M. was between the ages of 4 and 7, five of which were charged.

**{¶39}** In *State v. Victor*, 11th Dist. Ashtabula No. 2021-A-0046, 2022-Ohio-4159, we rejected a similar argument to appellant's, explaining that:

**{¶40}** "While [the victim] did testify as to the Gross Sexual Imposition in a blanket manner by giving general testimony about the [appellant's] conduct and stating that it occurred on several occasions, her testimony was clear that this conduct did occur more than once. Her testimony regarding his actions demonstrated that [the appellant] had

10

sexual contact with her on multiple occasions, up to ten times, when she was less than thirteen years old. Whether the level of detail provided by her testimony satisfied the trier of fact as to the credibility of her allegations is not an issue of sufficiency. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79 (an evaluation of a witness' credibility, 'is not proper on review for evidentiary sufficiency').

{¶41} "Further, the lack of specificity as to the dates on which this conduct occurred does not warrant a finding of insufficiency. This court has repeatedly observed, in the context of motions to dismiss an indictment, that the 'precise date and time of an alleged offense in an indictment are immaterial to the essential elements of an offense; therefore, the failure to provide an exact date and time will not by itself warrant dismissal of a charge.' (Citation omitted.) *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, et al., 2011-Ohio-6845, ¶ 53 ('the specific date of sexual conduct is not an element of rape'); *Matter of J.D.*, 11th Dist. Lake No. 2021-L-126, 2022-Ohio-2334, ¶ 25 ('[o]rdinarily, precise times and dates are not essential elements of offenses') (citation omitted). '[I]n cases involving alleged sexual misconduct with young children, this court and other courts have held that it is not mandatory for the state to provide precise dates and times because young children are usually unable to remember such specific information and such incidents usually take place over an extended span of time.' *State v. LaTorres*, 11th Dist. Ashtabula Nos. 2000-A-0060 and 2000-A-0062, 2001 WL 901045, *4 (Aug. 10, 2001). '[I]f the evidence supports a finding that the defendant was alone with the victim during the relevant time frame and the defense is that the sexual abuse never occurred," rather than an alibi defense, 'the inability to identify a specific date does not require reversal of a conviction.' *Id.*" *Id.* at ¶ 20-21.

11

Case No. 2022-A-0109

{¶42} Challenges to the sufficiency of the evidence have been rejected under similar circumstances. *See e.g., State v. Arcuri*, 11th Dist. Trumbull No. 2015-T-0123, 2016-Ohio-8254, ¶ 80 (finding sufficient evidence to sustain the appellant's four convictions of rape where minor victim indicated the incidents occurred during or about the time frame alleged in the indictment); *State v. Triplett*, 11th Dist. Ashtabula No. 2013-A-0018, 2013-Ohio-5190, ¶ 40 ("in cases involving the sexual molestation of minor children, the state is not required to provide exact dates because the victims are simply unable to remember such facts, particularly where the repeated offenses take place over an extended period of time"); *State v. Runnion*, 7th Dist. Belmont No. 21 BE 0029, 2022-Ohio-3785, ¶ 48 (it is sufficient for the state to establish the offenses occurred during the time frame alleged).

{¶43} We agree with Mr. Huertas-Alicia that B.M.'s description of the vaginal sexual contact does not rise to the level of sexual conduct, but that does not equate to a finding that there was insufficient evidence to sustain five convictions for rape or that there was insufficient evidence of five incidents of "penetration." Although B.M.'s testimony was general at times, giving only a description of the type of incidents and what occurred, there is no doubt from her testimony that inappropriate sexual conduct occurred multiple times over a long period of time. Further, her descriptions of the sexual conduct were specific enough. *See e.g. State v. Washington*, 2023-Ohio-1667, 214 N.E.3d 1188, ¶ 100-101 (8th Dist.) (Child victim understood and appreciated the difference between "on," "outside," "in," and "inside," for purposes of anal penetration). Given the variety of sexual conduct described in the child victim's testimony, a further description of the nature of the

Case No. 2022-A-0109

sexual conduct relative to each count of rape set forth in the indictment or as clarified in the bill of particulars would have aided in our sufficiency analysis.

{¶44} In sum, "[t]he testimony of a rape victim, if believed, is sufficient to support each element of rape." *State v. Benchea*, 11th Dist. Trumbull No. 2015-T-0054, 2016-Ohio-1369,¶ 51, quoting *State v. Kring*, 10th Dist. Franklin No. 07AP-610, 2008-Ohio-3290, ¶ 42 (internal citation omitted).

{¶45} Mr. Huertas-Alicia's first assignment of error is without merit.

### Manifest Weight of the Evidence

{¶46} In his second assignment of error, Mr. Huertas-Alicia contends his convictions are against the manifest weight of the evidence because the evidence presented did not prove his guilt beyond a reasonable doubt, rather it was a "she said/he said" account of the events.

{¶47} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d 380, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶48} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a

13

'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶49} Mr. Huertas-Mendez contends the testimony at trial was "limited" and a "he said/she said" version of events. However, as we have often stated, "'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.'" *State v. Gutierrez-Reynoso*, 11th Dist. Lake No. 2022-L-130, 2023-Ohio-3122, ¶ 66, quoting *State v. Ferrell*, 2020-Ohio-6879, 165 N.E.3d 743, ¶ 59 (10th Dist.).

{¶50} Further, "there is no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction." *Benchea*, 2016-Ohio-1369, at ¶ 51, quoting *State v. Flowers*, 10th Dist. Franklin No. 99AP-530, 2000 WL 552197, *9 (May 4, 2000). *See, also In re G.H.*, 11th Dist. Lake No. 2015-L-037, 2015-Ohio-5339, ¶ 27 (a rape victim's testimony requires no corroboration). Likewise, the

14

Case No. 2022-A-0109

general testimony of B.M. does not compel the finding that Mr. Huertas-Alicia's convictions are against the manifest weight of the evidence. *See Washington*, 2023-Ohio-1667, ¶ 122 (the appellant's general complaint's regarding the "vagueness" of the victim's testimony did not compel a finding that his convictions were against the manifest weight of the evidence).

{¶51} "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.*, 10 Ohio St.3d 77, 80. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶52} Weighing the strength and credibility of the evidence presented and the reasonable inferences to be drawn therefrom, we cannot say the jury clearly lost its weigh and created such a manifest miscarriage of justice that Mr. Huertas-Alicia's conviction must be reversed. This is not the "'exceptional case'" in which the evidence weighs heavily against Mr. Huertas-Alicia's convictions. *Thompkins,* 78 Ohio St.3d 380,387, quoting *Martin,* 20 Ohio App.3d 172,175.

{¶53} Mr. Huertas-Alicia's second assignment of error is without merit.

Case No. 2022-A-0109

**{¶54}** The judgment of the Ashtabula County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.