[Cite as *State v. DeJesus*, 2024-Ohio-2956.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-A-0066** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| WILSON DEJESUS, JR., | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00089 |

## O P I N I O N

Decided: August 5, 2024
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Mark Majer*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Christopher R. Bucio, and Rafael A. Villegas*, The Bucio Law Firm, LLC, 118 North Main Avenue, Sidney, OH 45365 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}    Defendant-appellant, Wilson DeJesus, Jr. ("appellant"), appeals his convictions for five counts of rape following a jury trial in the Ashtabula County Court of Common Pleas.  For the following reasons, we affirm.

{¶2}    On February 17, 2022, the Ashtabula County Grand Jury returned a five-count indictment charging appellant with five counts of rape, first degree felonies, in violation of R.C. 2907.02(A)(1)(b) and (B).[1]

---

1. The counts were identical and occurred on or about December 1, 2020 through August 23, 2021.

{¶3}    On February 28, 2022, appellant entered a plea of not guilty at arraignment. Bond was set at $100,000 cash/surety or 10% with GPS electronic monitoring. As an additional condition of bond, appellant was ordered to have no contact with the victim, A.M.J.

{¶4}    On May 24, 2022, appellant filed a Motion for Competency and Sanity Examination/Evaluation pursuant to R.C. 2945.371. The trial court granted that motion on June 23, 2022. The trial court appointed the Forensic Psychiatric Center of Northeast Ohio to examine the appellant and determine his sanity and competency to stand trial. Appellant and the State stipulated to the competency evaluations and the trial court found appellant to be sane and competent to stand trial on September 19, 2022. (T.d. 30, T.d. 88, p. 2-3).

{¶5}    A jury trial commenced on August 29, 2023. The following facts were presented at trial:

{¶6}    Appellant and Felisha Marsch ("Mother"), A.M.J's mother, were in a romantic relationship. A.M.J. was a baby when her mother and appellant began dating. They resided in Ashtabula, Ohio. Appellant and Mother had two children together during their relationship, both younger than A.M.J.

{¶7}    A.M.J. (d.o.b. 7/14/2012) was eleven years old at the time of the trial. While A.M.J. called appellant Wilson, she considered him to be a father figure who was in charge of her when her mother was gone.

{¶8}    According to A.M.J., the abuse began when she was seven or eight years old. Appellant "kissed [her] in an inappropriate way" and "not how a dad would kiss a daughter." (T.d. 91, p. 156-157). A.M.J. also testified that appellant "licked [her] private

2

one time, and made me lick his private" when she and appellant were in the bedroom shared by her mother and appellant. (T.d. 91, p. 158).

{¶9} A.M.J. testified that on a different occasion, appellant called her into the living room. A.M.J. stated she did not want to do what appellant was asking so she tried to shut her mouth. She testified that appellant plugged her nose to force her to open her mouth and then placed his penis in her mouth. (T.d. 91, p. 161-162). She testified her nose bled afterwards.

{¶10} According to A.M.J., on a different day, appellant also placed his penis in her mouth when they were in the basement. She testified "in order to play in my playroom or to get out of * * * my punishment. I had to do that." She continued, I just did it 'cause mm, I didn't want to get hurt or any of that."

{¶11} A.M.J. testified that appellant "did it multiple times," and indicated it was so often that she "couldn't even count." She indicated that appellant placed his penis in her mouth more than ten times. She testified that it would hurt because "it touched the back of her throat." (T.d. 91, 165). She stated that it happened on multiple occasions in several locations within the house: the basement, the living room, her mother's room, her room, and the bathroom. A.M.J. testified that on one occasion, appellant took her picture [with his cell phone] when his penis was in her mouth but that he deleted it. (T.d. 91, p. 170).

{¶12} Appellant would also put his fingers in A.M.J's mouth sometimes before or after he put his penis in her mouth. A.M.J. testified that she and appellant were naked in the living room and appellant laid on top of her. (T.d. 91, p. 167). She testified appellant "put his penis inside me" and that "it hurt." (T.d. 91, p. 167).

3

Case No. 2023-A-0066

{¶13} According to A.M.J., appellant would usually do these acts when Mother was at the store or work. She testified that appellant told her not to tell anyone because he would get into trouble. (Td. 91, p. 169). A.M.J. testified that she first disclosed the abuse to her mother in August 2021 when she was nine years old.

{¶14} Kate Burns ("Kate") is a research nurse at University Hospitals in Cleveland. She testified that she saw A.M.J. in the Pediatric Emergency Department on August 23, 2021. Kate stated that A.M.J. reported to her that appellant licked her crotch. She also stated that A.M.J. disclosed that the sexual activity had been going on since Christmas. Kate examined A.M.J. and collected a Sexual Assault Nurse Examiner ("SANE") kit. Kate noted no abnormalities on her body, including the pelvic region.

{¶15} Julie Hamilton ("Ms. Hamilton"), an intake worker at Ashtabula County Children's Services, was assigned the case through Children's Services on August 23, 2021. She conducted a home visit the following day. She also scheduled the forensic interview.

{¶16} Detective Wesley Burns ("Det. Burns"), a detective for the City of Ashtabula Police Department, was assigned to the case. Mother came to the police department to report the incidents disclosed by A.M.J.[2] According to Det. Burns, Children Services was already involved. Det. Burns testified that a SANE kit was collected at the hospital and that he picked it up and placed it into a secure evidence locker at the police department. The SANE kit was later delivered to the Bureau of Criminal Investigations ("BCI") by another officer. The SANE kit yielded no physical evidence.

---

2. Detective Burns and Nurse Kate Burns are not related to one another.

4

{¶17} Det. Burns testified that he attended the forensic interview of A.M.J. which was conducted by Michelle Flick on September 1, 2021. Det. Burns and Ms. Hamilton observed the interview via live feed. The interview was also recorded. Ms. Hamilton testified it was a true and accurate recording of the interview she observed on September 1, 2021. The recording was submitted as State's Exhibit 1 and played for the jury. (T.d. 92, p. 240).

{¶18} During the interview, A.M.J. similarly recounted incidents of oral sex with appellant that occurred between December 2020 and August 2021 in various locations in her home.

{¶19} Ms. Hamilton also testified that children have a tendency to delay disclosure and disclose details over time. Ms. Hamilton also described a body chart which was used in the forensic interview with A.M.J., State's Exhibit 7. It had X's on the body's neck, mouth, crotch, and buttocks, which indicate places on A.M.J's body that were touched by appellant.

{¶20} Appellant called a single witness, Mother. She testified that she did not observe any of the alleged abuse occurring in the home. She also testified that around the time of A.M.J.'s disclosure, she was "really defiant" and was "lashing out." (T.d. 92, p. 272). She stated that A.M.J. would lie about certain things like taking snacks without permission. Mother also testified that appellant had cameras in many rooms in the house including bedrooms. The feeds from the camera were viewable on appellant's phone. She also testified that she obtained a protection order against appellant after A.M.J. reported the abuse.

5

{¶21} On August 30, 2023, defendant was convicted of five counts of rape as charged in the indictment. Bond was revoked and a presentence investigation (PSI) was ordered.

{¶22} A sentencing hearing was held on October 13, 2023. The trial court sentenced the appellant to a term of life imprisonment without the possibility of parole on each count and ordered the sentences to be served concurrently. Appellant was also advised of his duty to register as a Tier III sex offender/child victim offender.

{¶23} Appellant timely filed his notice of appeal. Appellant raises the following assignments of error for review:

> [1.] Defendant-Appellant's Conviction was Against the Manifest Weight of the Evidence Presented at Trial.
>
> [2.] The Evidence Presented at Trial was Legally Insufficient for the Trier of Fact to Support its Conviction of Defendant-Appellant.
>
> [3.] Testimonial Evidence was Improperly Admitted at Trial in Violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.

{¶24} We will address appellant's assignments of error out of order beginning with appellant's third assignment of error and will address appellant's first and second assignments of error together.

{¶25} In appellant's third assignment of error, appellant alleges that the trial court erred when it permitted the State to introduce and play State's Exhibit 1, the recorded video of the forensic interview of A.M.J. Specifically, appellant alleges that the trial court's decision violates the Confrontation Clause of the Sixth Amendment of the United States Constitution as Michelle Flick, the forensic interviewer, did not testify at trial. Appellant argues that without Ms. Flick, "it is unclear as to whether which questions and answers

6

included in the video may be distinguishably investigative and not for medical purposes." Therefore, he asserts he was denied the ability to cross examine Ms. Flick to make those distinctions.

{¶26} "Although we generally review decisions on the admission of evidence for an abuse of discretion, appellate courts apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause." *State v. Zaccone*, 2018-Ohio-5340, ¶ 13 (11th Dist.)., quoting *State v. Edwards*, 2013-Ohio-1290, ¶ 24 (11th Dist.).

{¶27} "'The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." We have held that this bedrock procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).'" *State v. Arnold*, 2010-Ohio-2742, ¶ 12 quoting *Crawford v. Washington*, 541 U.S. 36, 42 (2004). "Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment." *Id.*, quoting *State v. Self*, 56 Ohio St.3d 73, 79 (1990).

{¶28} The *Arnold* Court recognized:

> In *Crawford*, the Supreme Court of the United States considered whether the introduction of a hearsay statement admissible under state law violated a defendant's Sixth Amendment right to confront the witnesses against him. The court held that out-of-court statements violate the Sixth Amendment when they are testimonial and the defendant has had no opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. See also *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21–26. The court did not comprehensively define "testimonial" but stated that the core class of testimonial statements includes statements " 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' "

7

> *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting Brief of Amicus Curiae National Association of Criminal Defense Lawyers 3. Accord *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus. The court emphasized that the objective-witness test was but one of many possible ways to determine whether a statement is testimonial, and it expressly stated, "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

*Arnold,* at ¶ 13.

{¶29} While the *Crawford* Court did not define "testimonial," it did offer some additional guidance:

> The first deems testimonial all " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " [*Crawford*, 541 U.S.] at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting Crawford's brief. The second includes all " 'extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " *Id.* at 52, * * *, quoting *White v. Illinois* (1992), 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (Thomas, J., concurring). And the third includes " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.,* quoting the brief of amicus curiae National Association of Defense Lawyers.

*State v. Stahl*, 2006-Ohio-5482, ¶ 19.

{¶30} In *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Supreme Court of the United States held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing

8

emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. Accord *Siler*, 2007-Ohio-5637, paragraph one of the syllabus. This test is known as the primary-purpose test.

{¶31} In *Stahl,* 111 Ohio St.3d 186, where the statements were made to a medical professional at a medical facility for the purpose of receiving medical treatment as opposed to statements made to law enforcement, the Court employed the objective-witness test detailed in *Crawford.* *Id.* at ¶ 25. The *Stahl* Court concluded that the challenged statements were nontestimonial because "to a reasonable person, questioning by a nurse or other medical professional during an emergency-room examination would appear to serve a primarily health-care-related function." *Id.*, at ¶ 47. The Court recognized that while the victim "could have reasonably believed that *** the examination conducted at the DOVE unit would result in scientific evidence being extracted for prosecution purposes, the statement would be used primarily for health-care purposes." *Id.*

{¶32} Notably, in *Stahl*, the defendant urged the Supreme Court "to consider not only [the victim]'s state of mind when giving the statement but both [the nurse]'s and [law enforcement]'s motivations in conducting and facilitating the interview and the medical examination." *Id.,* at ¶ 20. The Ohio Supreme Court noted:

> *Crawford* narrowed and refined the right to confrontation by focusing on its derivation and held that the right does not extend to nontestimonial hearsay. Thus, we should not allow our definition of "testimonial" to trample other forms of hearsay to which the right of confrontation does not apply. A definition of "testimonial" for Sixth Amendment purposes should therefore focus on the principal evil the clause meant to remedy: "the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *Crawford*, 541 U.S. at 50, 124 S.Ct.

9

1354, 158 L.Ed.2d 177. Stahl's modified third formulation, which requires review of the motivations of the declarant *and the questioner*, would at times preclude forms of hearsay that the Framers did not intend to preclude.

*Stahl,* at ¶ 21.

**{¶33}** At trial, trial counsel argued he was denied the ability to confront Ms. Flick regarding her credentials and whether the interview was conducted properly. The State argued that Ms. Hamilton could testify to the video as "she's looking at it for purposes of the medical purposes and diagnosis for CSB purposes. She is not making an opinion whether or not it's done right or wrong." On appeal, appellant argues he was unable to inquire from Ms. Flick whether the questions were necessarily for investigative or medical purposes.

**{¶34}** In reviewing an alleged confrontation clause violation, this Court must first find that Ms. Flick's statements were testimonial and that the testimonial statements are offered for the truth of the matter asserted. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford* at 59 fn.9. See also, *Williams v. Illinois*, 567 U.S. 5 (2012).

**{¶35}** We would note that these forensic interviews present a unique situation in the framework of a Confrontation Clause analysis. It has been repeatedly recognized that child-advocacy centers employ multidisciplinary teams that work together to ensure a child is interviewed only once. These multidisciplinary teams generally consist of medical personnel and law enforcement. Therefore, these forensic interviews serve dual purposes: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and

10

treatment of the victim. The individual conducting the interview necessarily serves 'as an agent of each member of the multidisciplinary team.'" *Arnold*, 126 Ohio St.3d 290, ¶ 33.

{¶36} This Court recognized in *State v. Volpi,* 2023-Ohio-4488, ¶ 88 (11th Dist.), *appeal not allowed*, 2024-Ohio-1228.

> In *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775 the Ohio Supreme Court addressed forensic interviews conducted with sexual-abuse victims at child advocacy centers. The court concluded statements made to interviewers at child advocacy centers that serve a primarily forensic or investigative purpose are testimonial in nature and therefore inadmissible pursuant to the Confrontation Clause of the Sixth Amendment when the declarant is unavailable for cross-examination. *Id.* at paragraph one of the syllabus. However, statements made for medical diagnosis and treatment are non-testimonial and are therefore "admissible without offending the Confrontation Clause." *Id.* at paragraph two of the syllabus.

{¶37} Ms. Flick conducted a forensic interview of A.M.J. She asked questions and allowed A.M.J. to lead the discussion regarding the alleged sexual conduct between her and appellant. Appellant directs this court to no testimonial statement made by Ms. Flick which would implicate the Confrontation Clause. The questions Ms. Flick asked or her motivations for doing so, do not amount to testimonial statements. Instead, her questions elicited testimonial statements from A.M.J.[3] Therefore, it is A.M.J.'s responses to Ms. Flick's questions, where A.M.J. is the declarant, that would be subject to challenge under the Sixth Amendment as well as the Rules of Evidence.

---

3. At least one court has discussed this argument. In *State v. Sanders*, 473 S.WW.3d 675, a Missouri court of appeals reviewed the admission of two recorded forensic interviews and concluded that "the forensic interviewer was not a 'witness against' Defendant because the interviewer's questions and statements during the interview were (1) not made for the purpose of proving any fact, (2) not used to establish the truth of any matter, and (3) not evidence of Defendant's guilt." Id., at 679–80.

Case No. 2023-A-0066

**{¶38}** While it is clear that the interview elicited testimonial and non-testimonial statements, A.M.J. testified at trial and appellant had the full ability to cross-examine her. "'[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.' *Crawford v. Washington* (2004), 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 9, citing *California v. Green* (1970), 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489. See also *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 110." *State v. Perez*, 2009-Ohio-6179, ¶ 127. See also, *State v. Davis*, 2024-Ohio-1504 ¶ 28 (5th Dist.). Therefore, the trial court's decision to allow the full video recordings did not violate appellant's right to confrontation. Volpi, 2023-Ohio-4488, at ¶ 88.

**{¶39}** As appellant has failed to point this Court to, and this Court did not identify on review, any statement of Ms. Flick which was testimonial and offered to prove the truth of the matter asserted, there was no violation of the Confrontation Clause as to Ms. Flick. Because A.M.J. testified at trial, and was available to be cross-examined by appellant, the playing of the recording of the forensic interview did not violate the Confrontation Clause.

**{¶40}** While we recognize that some of the statements made during the interview are hearsay, any error is rendered harmless beyond a reasonable doubt. *State v. Remy*, 2018-Ohio-2857, ¶ 65 (2d Dist.). Any hearsay statements made by the victim which were not offered for medical purposes were duplicative of the statements she made during her trial testimony.

12

Case No. 2023-A-0066

{¶41} As such, appellant's third assignment of error is without merit.

{¶42} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. In his second assignment of error, appellant asserts that the evidence was insufficient to support his convictions. We will address these assignments of error together.

{¶43} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶44} In contrast, "[a] challenge to the sufficiency of the evidence raises the issue of 'whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Stacy*, 2023-Ohio-3942, ¶ 14 (11th Dist.), *quoting State v. Clinton*, 2017-Ohio-9423, ¶ 165. When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is

13

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶45} Appellant was convicted of five counts of rape, first degree felonies, in violation of R.C. 2907.02 (A)(1)(b).

{¶46} R.C. 2907.02 (A)(1) provides in relevant part: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the person." "'Sexual conduct'" includes vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex."

{¶47} A.M.J. testified that appellant, her mother's fiancé, and the father of her two younger siblings, forced her to engage in oral sex, fellatio, multiple times when she was eight and nine years old. She testified that appellant had her perform oral sex on him on multiple occasions throughout the home including in the basement, bathroom, living room, her bedroom, and the bedroom her mother and appellant shared. She testified that it occurred more than ten times. She also described an occurrence where appellant performed cunnilingus, placing his mouth on her vagina.

{¶48} Appellant argues that other than A.M.J.'s testimony, the State failed to provide the jury with any further evidence which tended to prove sexual conduct between appellant and A.M.J. However, no further evidence or physical evidence is required. Sexual conduct, which is an element of the offense, can also be proven through the

14

testimony of the victim. See *State v. Henderson*, 2002-Ohio-6715, ¶ 35 (11th Dist.). This Court held, "[t]he victim's testimony, if believed, was sufficient to convict appellant of the charged crime. When prosecuting an offender for rape, the state is not required to provide physical evidence of penetration. Rather, all the state must do is establish, beyond a reasonable doubt, that sexual conduct occurred. This may be accomplished through either physical evidence and/or witness testimony." *Id.*, at ¶ 36. See also, *State v. Ross*, 2018-Ohio-452, ¶ 40 (11th Dist.).

{¶49} Thus, in viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, sufficient evidence was presented to support appellant's convictions.

{¶50} With respect to appellant's manifest weight argument, appellant takes issue with the testimony of Kate and Det. Burns. Specifically, appellant argues that neither Kate's nor Det. Burns's testimony corroborated or developed A.M.J.'s testimony. Appellant does not allege any inconsistency in the statements. However, he asserts that the testimony highlighted the lack of physical evidence and should weigh heavily against the conviction.

{¶51} The jury is in the best position to weigh the evidence placed before it. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). See also, *State v. Huertas-Alicia*, 2024-Ohio-2214 (11th Dist.). A.M.J. testified before the jury and the jury observed the recording of her forensic interview. Any possible inconsistency in A.M.J.'s recitation

15

of the events was before the jury for consideration. In convicting appellant of all five counts of rape, the jury clearly determined that A.M.J. was credible. Moreover, Kate testified that when A.M.J. was examined at the hospital, she had already showered and bathed since the last reported encounter with appellant. She also testified that she did not expect to see any abnormalities or physical signs during the evaluation since the conduct reported was oral sex. Credibility determinations rest solely with the finder of fact.

{¶52} This is not an exceptional case in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant is entitled to a new trial. Appellant's convictions are consistent with the manifest weight of the evidence.

{¶53} As such, appellant's first and second assignments of error are without merit.

{¶54} For the reasons set forth above, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2023-A-0066