OPINION
{¶ 1} Defendant-appellant Michael H. Miller appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on two counts of rape, in violation of R.C. 2907.02
(A)(2); one count of kidnapping, in violation of R.C. 2905.01
(A)(4); one count of abduction, in violation of R.C. 2905.02
(A)(2); and three counts of domestic violence, in violation of R.C. 2919.25 (A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 21, 2005, the Licking County Grand Jury indicted appellant on the aforementioned charges relative to allegations made by his wife, Ashley Miller, NKA Ashley Cope. Appellant appeared before the trial court at his arraignment on October 31, 2005, and entered pleas of not guilty to all the charges. The matter proceeded to jury trial.
 {¶ 3} At trial, Ashley Cope stated her married name was Ashley Miller, and she had returned to her maiden name after obtaining a divorce from appellant shortly before the trial. Cope, who was 18 at the time of trial, testified she was born without the lower portion of her left leg, which required the use of a prosthetic limb. Cope met appellant in January, 2005. Appellant told Cope his name was Corey and he was 21 years old. Cope was seventeen years old at the time and lived with her parents. Sometime in February, 2005, appellant moved into Cope's parents' home. In April, Cope learned appellant's true name and age. Despite her disapproval and after many fights, Cope's mother signed a consent form, allowing her daughter to marry appellant. Cope and appellant married on September 9, 2005. The couple moved to an apartment in Newark, Ohio, approximately two weeks later. Cope was a senior in high school at the time and worked as a cashier at a grocery store. Appellant worked at Unifacs Steel.
 {¶ 4} Cope testified, on October 4, 2005, she and appellant had an argument because appellant wanted to have sex and she did not. After she refused to have sex with appellant, he bound her mouth and hands with duct tape and performed anal intercourse on her. Cope stated she had never had anal sex with appellant before that incident. One or two days later, Cope and appellant had another argument, which resulted in appellant's throwing Cope over the back of the couch. Cope went to work the next day, but left immediately because she was having difficulty breathing. Appellant refused Cope's request he take her to the doctor.
 {¶ 5} Cope recalled, on October 8, 2005, appellant again forced her to have anal intercourse with him. Cope initially refused to have oral sex with appellant, but he threatened to have anal intercourse with her if she did not comply. Cope began to perform oral sex on appellant. When she stopped, appellant ripped her underwear and forced her to have anal sex. After the incident, the two slept in the same bed for the rest of the night. The following day, the couple went to a cookout. Cope went to work on Monday, October 10, 2005. Appellant picked her up from work and drove Cope to a friend's house. As they drove to their apartment, appellant struck her repeatedly. Appellant held Cope as they walked into their apartment. Appellant threw Cope onto the ground, sat on top of her and for approximately two hours, beat her face and head, and choked her. Appellant went to the garage, threatening to commit suicide. Appellant returned to the apartment in a rage because Cope did not try to stop him from killing himself. Again, appellant began to choke her. When she attempted to flee, appellant forcibly stopped her and threatened to kill her.
 {¶ 6} The following morning, October 11, 2005, appellant took Cope from their apartment against her will and without her artificial leg, and drove to his workplace. Appellant made Cope sit in his truck while he worked. At lunch time, appellant drove Cope to their apartment, apologized, and told her he would return at approximately 5:30pm. Appellant took Cope's artificial limb to ensure she could not leave. Cope hopped to a neighbor's house, called her mother and the police.
 {¶ 7} On cross-examination, Cope conceded she and appellant had anal sex once before this time, but claimed it was not consensual. She told an investigating officer the couple had anal sex twice before. Although on direct-examination Cope testified she was wearing her artificial limb, on cross-examination, she stated she was not. Cope further testified she had sat in appellant's truck while he worked on approximately ten prior occasions. She also testified the two rapes occurred on October 8, and October 10, 2005, as opposed to October 4, and October 8, 2005, as she testified in her direct examination. On re-direct, Cope stated the rapes occurred on October 8, and 10, 2005.
 {¶ 8} Olivia Haas, a sexual assault nurse examiner at Licking Memorial Hospital, testified she was paged to the Emergency Room on the afternoon of October 11, 2005, to assist with a sexual assault victim (Cope). Haas took a history from Cope, completed a rape kit, took photographs, and performed an internal and external examination of her. Haas testified extensively about the bruises, scrapes and scratches she observed on Cope's body. Haas stated the bruises were consistent with the events Cope described to her. With respect to the pelvic examination of Cope, Haas stated Cope sustained an abrasion to her vagina and small tears to her rectum. Haas explained these minor injuries were not unusual. On cross-examination, Haas acknowledged the abrasions Cope had could be consistent with consensual sexual activity, but such was not necessarily so.
 {¶ 9} At the close of the State's evidence, appellant made an oral Crim. R. 29 motion for acquittal, which the trial court denied. Appellant testified on his own behalf. He acknowledged he did, in fact, subject Cope to physical violence on October 10, 2005, and he had anger problems. Regarding the incident on October 8, 2005, appellant stated he and Cope were smoking illegal drugs and were acting out sexual fantasies which included duct taping Cope's wrist and performing anal sex on her. The duct tape was in the living room as the couple had used it to fix Cope's bong. Appellant stated the couple had had anal sex on approximately eight or nine prior occasions and they engaged in rough sex. After the couple argued on October 10, 2005, appellant apologized to Cope by performing oral sex on her. He acknowledged the couple had vaginal intercourse, but not anal sex. Appellant testified he never forced or threatened Cope to have any type of sex with him.
 {¶ 10} After hearing all the evidence and deliberations, the jury found appellant guilty of all the charges. The trial court sentenced appellant to an aggregate term of incarceration of twenty-two years.
 {¶ 11} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 12} "I. MR. MILLER'S CONVICTION FOR THE RAPE ALLEGED IN COUNT FIVE OF THE INDICTMENT IS BASED ON INSUFFICIENT EVIDENCE.
 {¶ 13} "II. MR. MILLER'S CONVICTION FOR THE RAPE ALLEGED IN COUNT FIVE OF THE INDICTMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} "III. THE TRIAL COURT ERRED IN ALLOWING THE SEXUAL ASSAULT NURSE EXAMINER TO TESTIFY REGARDING HEARSAY STATEMENTS OF THE VICTIM THAT WERE NOT INCIDENTAL TO MEDICAL TREATMENT.
 {¶ 15} "IV. THE TRIAL COURT ERRED IN IMPOSING SENTENCE ON THE BASIS OF AN UNCONSTITUTIONAL STATUTORY FELONY SENTENCING SCHEME."
 I, II {¶ 16} In his first and second assignments of error, appellant contends his conviction for rape, set forth in count five of the indictment, was against the sufficiency and weight of the evidence.
 {¶ 17} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 19} Appellant was convicted in Count 5 of rape, in violation of R.C. 2907.02(A)(2), which provides:
 {¶ 20} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 21} Count five of the indictment alleged appellant had raped Cope on October 10, or 11, 2005. Appellant points to Cope's direct examination during which she testified the rapes occurred on October 4, and October 8, 2005, adding it was only during her cross-examination and redirect, Cope claimed for the first time the rapes occurred on October 8, and October 10, 2005. Appellant explains although Cope testified extensively and in detail about appellant's assault against her on October 10, 2005, Cope described exclusively physical abuse and not a sexual assault. With respect to October 11, 2005, appellant submits Cope's testimony provided no information regarding a sexual assault or even consensual sexual activity.
 {¶ 22} "Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged." State v. Madden (1984),15 Ohio App.3d 130, 131 (Citations omitted). See, also, State v. Gingell
(1982), 7 Ohio App.3d 364; State v. Green (Nov. 4, 1988), Portage App. No. 1895, unreported. "Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." State v. Sellards (1985),17 Ohio St.3d 169, 171. "The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment." State v. Jewell, Delaware App. No. 01CAA03006, 2000-Ohio-226. (Citation omitted).
 {¶ 23} In the case sub judice, time is not an essential element of rape; therefore, it was sufficient for the State to prove the offense occurred on a date reasonably near the date claimed. We find Cope's testimony provided competent, credible evidence from which the jury could find appellant raped Cope between a date reasonably near the date claimed in the indictment, and the events leading up to and including the rapes occurred during the first two weeks of the month of October, 2005. Appellant has not demonstrated any prejudice by the lack of precision as to the date on which the rape as set forth in Count 5 occurred.
 {¶ 24} Appellant's first and second assignments of error are overruled.
 III {¶ 25} In his third assignment of error, appellant maintains the trial court erred in permitting the sexual assault nurse examiner to testify regarding statements Cope made to her as such statements were not incidental to medical treatment; therefore, inadmissible hearsay.
 {¶ 26} Appellant acknowledges the 803(4) exception to the hearsay rule, but submits Cope's statements as testified to by Olivia Haas were not exempt from the hearsay rule because Hass' examination of Cope was forensic in nature and not medical. Appellant asserts the State failed to present evidence to show Cope presented at the hospital seeking medical treatment, adding Haas did not provide any medical treatment to Cope.
 {¶ 27} Evid. R. 803(4) provides:
 {¶ 28} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 29} "* * *
 {¶ 30} "(4) Statements for purposes of medical diagnosis ortreatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 31} The evidence adduced at trial established Cope recalled speaking with Haas about what occurred and understood speaking with the nurse was necessary because the information was needed to ensure she was not injured. Cope understood the medical history she provided to Haas was for the purpose of medical treatment, and she consented to such questioning and any necessary treatment. Haas testified extensively regarding the purpose of the procedure in the questions she asked during the examination of Cope. We find Cope's statements to Haas were made for the purposes of medical treatment and/or diagnosis; therefore, fell within the 803(4) hearsay exception.
 {¶ 32} Appellant's third assignment of error is overruled.
 IV {¶ 33} In his final assignment of error, appellant argues the trial court erred in imposing a sentence on the basis of an unconstitutional statutory felony sentencing scheme. Herein, appellant raises a Foster and Blakely argument.
 {¶ 34} Recently, the Ohio Supreme Court, in State v.Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, found certain provisions of Ohio's sentencing statute unconstitutional because those provisions required judicial factfinding in order to exceed the sentence allowed simply as a result of a conviction or plea.
 {¶ 35} To remedy Ohio's felony sentencing statutes, the Ohio Supreme Court, in Foster, severed the Blakely-offending portions that either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption. Foster at paragraph 97. Thus, the Court concluded "* * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph 100.
 {¶ 36} Accordingly, because appellant's sentence is based upon an unconstitutional statute that was deemed void in Foster
supra, appellant's sentence is, therefore, vacated, and the matter is remanded for resentencing in accordance with Foster,
supra.
 {¶ 37} Appellant's fourth assignment of error is sustained.
 {¶ 38} The convictions entered by the Licking County Court of Common Pleas are affirmed. The sentence entered by the same is vacated and the matter remanded for resentencing.
By: Hoffman, J., Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the convictions entered by the Licking County Court of Common Pleas are affirmed. The sentence entered by the same is vacated and the matter remanded for resentencing. Costs to be divided equally.