[Cite as *State v. Gibbs*, 2024-Ohio-5792.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| SEAN GIBBS | : | Case No. 2024CA00041 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                Appeal from the Court of Common Pleas, Case No. 2023CR0933


JUDGMENT:                      Affirmed


DATE OF JUDGMENT:           December 9, 2024


APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
PROSECUTING ATTORNEY
STARK COUNTY, OHIO

BY: Christopher A. Piekarski
    110 Central Plaza South, Suite 510
    Canton, OH 44702-1413

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue NW
Suite 808
Canton, OH 44702

*King, J.*

{¶ 1}   Defendant-appellant Sean Gibbs appeals the February 26, 2024 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURA HISTORY

{¶ 2}   In December of 2021, Jane Doe, the victim in this matter, lived with her mother, Gibbs, who was mother's fiancé, her maternal grandmother, and her younger brother. Doe was 11 years old that December. Her mother and Gibbs had moved in together when she was five. Transcript of Trial, Volume One (T(I)), 263.

{¶ 3}   For the first few years, Doe's relationship with Gibbs was very good. She looked at him as a father figure and he was her little brother's father. She also liked him as a partner for her mother. T(I), 265, 311. But in 2019 or 2020 that changed. Doe's mother noticed the shift in the relationship between Doe and Gibbs. Gibbs would go weeks without talking to Doe and mother noticed Doe "just had this feeling of hatred towards him and I never could understand why she was treating him that way." When mother told Gibbs she wanted to talk with Doe and get to the bottom of the issue, Gibbs discouraged her from doing so. T(I) 265-266.

{¶ 4}   One evening in December of 2021, mother was going through Doe's phone because she noticed she was texting a boy. As she scrolled through their conversation, she found a text from Doe stating "My stepdad raped me." T(I) 266-267. Mother was upset and went to confront Doe along with Gibbs. She asked Doe why she would make this up because Gibbs could get in a lot of trouble and it could ruin his life. Doe looked directly at Gibbs and stated "you did do it." Upon further conversation, mother determined that Doe

did not understand what exactly "rape" meant. Doe confirmed that there was no penile-vaginal intercourse, however stated "but he did touch me." T(I) 267.

{¶ 5}   Mother did not initially believe Doe because Doe had a history of lying about "little petty things." T(I) 268-269. Gibbs assured mother that he would never hurt Doe. T(I) 269-270. The same evening, mother called Gibbs' mother and discussed what happened. Gibbs' mother also did not believe Doe and spoke with her the same evening, however, Doe remained adamant in her allegations. Mother and Gibbs' mother discussed what to do next. Mother did not want to get the police involved and thus a decision was made to take Doe to a therapist at Phoenix Rising. T(I) 270. Doe saw the therapist, repeated the same allegations and the therapist contacted Stark County Children's Services.  T(I) 271.

{¶ 6}   Doe was seen at the Stark County Children's Network where she participated in a forensic interview and saw a Sexual Assault Nurse Practitioner. Doe disclosed Gibbs began to sexually assault her when she was approximately 8 years old and continued until just before her 11th birthday, approximately February of 2021. T(I) 343, T(II) 63. The assaults took place every week to every other week. T(I) 314. Doe did not realize Gibbs' behavior was inappropriate until she was approximately nine-years-old and her mother had a conversation with her about body safety. Nonetheless, she never said anything to her mother because she was scared and did not know how to tell her mother what was happening. T(I) 312-313, 323. Doe stated the assaults began as innocent cuddling, but progressed to touching her vaginal area and breasts over and under her clothing, and eventually Gibbs inserting his fingers into her vagina to "move them back and forth." Doe stated the digital penetration began when she was "maybe 10" and only happened "sometimes." T(I) 315-317. Doe further stated Gibbs would also put

her on top of his body and move her back and forth, grab her hand and place it on his crotch and once attempted to get her to touch his bare penis. T(I) 316-318. The abuse occurred when mother was asleep or away from home. It took place in Gibbs' bedroom, on the sofa in the living room, and on one occasion on the family's trampoline when she and Gibbs were having a campout. On one occasion of abuse in Gibbs' bedroom, Doe's little brother, who was between three and five years old, was present and tried to look under the blanket Gibbs had placed over himself and Doe. Gibbs told him to go away. T(I) 319-322.

{¶ 7} Following Doe's forensic interview and medical evaluation, the matter was deemed "substantiated" based on Doe's consistent, detailed disclosure, her mother's corroboration of some of the details, and the nurse's diagnosis of consistent with child sexual assault. T(II), 19, 64, State's exhibit 2.

{¶ 8} Once mother learned the details of the abuse, she connected Doe's allegations to numerous "red flags" she had overlooked and understood Doe was being truthful. T(I) 273, 302-303.

{¶ 9} As a result of these events, on May 5, 2023, the Stark County Grand Jury returned an indictment charging Gibbs with one count of rape, a felony of the first degree and alleging the victim was less than 10 years old, and two counts of gross sexual imposition, felonies of the third degree. Gibbs entered pleas of not guilty to the charges and elected to proceed to a jury trial which took place January 18-19, 2024.

{¶ 10} The state presented testimony from Doe, her mother, a Stark County Sheriff's Detective involved in the matter, the Stark County Children's Advocacy case

worker who conducted the forensic interview, and the nurse practitioner who completed Doe's physical examination and elicited the above outlined facts.

{¶ 11} Gibbs presented testimony from his mother, three character witnesses, and testified on his own behalf. Gibbs admitted he was an addict in sustained recovery and had stole from family and friends to support his opiate habit. He insisted, however that after entering a rehabilitation program, he returned to "the old me, the person that you can trust; a person that is a good man, basically." T(II) 109-111.

{¶ 12} Gibbs' mother testified she had been oblivious to the fact that her son was using opioids, and admitted Gibbs had stole from her and her husband and that they had proceeded with prosecution. She testified that while she believes her son could be a drug addict, she did not believe he could be a child sex offender. T(II) 94-97, 107.

{¶ 13} After hearing the evidence and deliberating, the jury found Gibbs guilty as charged, but also found Doe was not less than 10 years of age at the time of the rape. Gibbs was subsequently sentenced to 10 years incarceration for rape and 60 months incarceration for each count of gross sexual imposition. The trial court ordered Gibbs to serve the sentences for gross sexual imposition concurrently, but consecutive to his sentence for rape. Gibbs was further classified a Tier III sex offender.

{¶ 14} Gibbs timely filed an appeal and the matter is now before this court for consideration. He raises five assignments of error as follow:

I

{¶ 15} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AGAINST THE APPELLANT TO SUSTAIN A CONVICTION FOR RAPE, THEREBY VIOLATING APPELLANT'S GUARANTEES DUE PROCESS PURSUANT TO THE FOURTEENTH

AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."

II

{¶ 16} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY VIOLATING APPELLANT'S GUARANTEES DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."

III

{¶ 17} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR AN ACQUITTAL BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT FOR RAPE. "

IV

{¶ 18} "THE APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL BECAUSE THE INDICTMENT DID NOT PUT HIM ON NOTICE OF THE CHARGES AGAINST HIM."

V

{¶ 19} "THE APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE PROSECUTION ENGAGED IN IMPROPER VOUCHING FOR THE VICTIM'S CREDIBILITY DURING CLOSING ARGUMENTS, AND SUCH CONVICTION MUST BE REVERSED."

I, II, III

{¶ 20} Gibbs' first three assignments of error are interrelated and will therefore be addressed together. In these assignments of error Gibbs argues his conviction for rape is against the manifest weight and sufficiency of the evidence. We disagree.

Applicable Law

{¶ 21} A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue,* 2002-Ohio-351 (5th Dist.), citing *State v. Williams,* 1996-Ohio-91; *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996). Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the State, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin,* 2007-Ohio-4649 at ¶12 (5th Dist.), citing *State v. Dennis,*1997-Ohio-372.

{¶ 22} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

## The Conviction

{¶ 23} Gibbs challenges only his conviction for rape pursuant to R.C. 2907.02(A)(1)(b)(B). That section provides in relevant part that no person shall engage in sexual conduct with another when the other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

## The Evidence

{¶ 24} Doe testified the assaults began as innocent cuddling, but progressed to touching her vaginal area and breasts over and under her clothing and eventually to Gibbs inserting his fingers into her vagina to "move them back and forth." Doe stated the digital penetration began when she was "maybe 10" and only happened "sometimes." T(I) 315-317.

## Gibbs' Complaints

{¶ 25} Gibbs makes a number of complaints challenging the weight and sufficiency of the evidence presented at trial. He first argues there is no physical evidence or witnesses to the acts and Doe's "physical examination completely negates the notion that she was ever sexually abused, and she has lied about sexual abuse in the past." Brief of appellant at 10.

{¶ 26} First, R.C. 2907. (A)(1)(b)(B) does not require the state to produce physical evidence in order to support a conviction for rape, nor does its absence, therefore, render Gibbs' conviction against the sufficiency of the evidence.

{¶ 27} Next, as set forth in our statement of facts, the instant matter involved allegations of touching and digital penetration which occurred in private, while other household members were asleep, or in the case of Doe's younger brother, too young to understand or report what Gibbs was doing. The touching and digital penetration described by Doe would not be expected to cause injury. T. II 60. Additionally, Doe did not disclose the abuse until well after the last incident had taken place, negating the possibility that any trauma or DNA evidence would be present upon examination. T. II 60-63. While Doe was indeed the only witness to the abuse, it is well established that the testimony of one witness, believed by the jury, is sufficient to establish any fact in question. *State v. Frazier*, 5th Dist. Delaware No. 04CAC10071, 2005-Ohio-3766, ¶ 14.

{¶ 28} Gibbs also falsely asserts that the evidence showed Doe lied about being sexually abused in the past. Gibbs' transcript reference for this assertion is from the testimony of Stark County Job and Family Services worker Kelly Porter. The testimony is in reference to the incident that took place on the trampoline. The testimony was not that Doe lied about the incident, but rather that *mother* thought Doe was lying about the incident when Doe initially disclosed the abuse. T.II 26-27. We therefore find Gibbs' argument devoid of support.

{¶ 29} Third, Gibbs argues the State failed to demonstrate that digital penetration took place within the indicted time period. However, in *State v. Miller*, 2006-Ohio-6236 (5th Dist.) at ¶ 22 this court noted:

"Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged." *State v. Madden* (1984), 15 Ohio App.3d 130, 131 (Citations omitted). See, also, *State v. Gingell* (1982), 7 Ohio App.3d 364; *State v. Green* (Nov. 4, 1988), Portage App. No. 1895, unreported. "Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." *State v. Sellards* (1985), 17 Ohio St.3d 169, 171. "The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment." *State v. Jewell*, Delaware App. No. 01 CAA03006, 2002-Ohio-226. (Citation omitted).

{¶ 30} Gibbs complains that while Doe testified the abuse continued until her 11th birthday, the dates alleged in the indictment ended three months shy of Doe's 11th birthday. The only essential time element relevant to Gibbs' argument was that Doe was

less than 13-years old when the rape occurred. Doe testified the offenses took place when she was "eight to eleven" and the digital penetration took place when she was "maybe 10." T(I), 315-317, 321. She advised during her visit to the Children's Advocacy Center that the abuse ended in early 2021. T(II) 63, State's Exhibit 2. We find Doe's testimony provided competent, credible evidence from which the jury could find Gibbs raped Doe between dates reasonably near the dates claimed in the indictment.

{¶ 31} Finally, the predominant theme of Gibbs' defense was that Doe was a liar, "wildly inconsistent" and should not be believed. He repeats that theme here on appeal. Doe admitted she had lied in the past about hiding her family's rent money, putting spray paint on a door, and telling a friend she was at gymnastics when she was not. She also testified she had "owned up" to those lies but has never said her allegations against Gibbs were not true. T(I) 345.

{¶ 32} Mother corroborated these previous lies, but indicated that when caught in these lies, Doe had admitted she had lied. As to the allegations of sexual abuse, however, mother stated Doe has been adamant that the abuse took place and had never lied about anything so serious. T(I) 269. During trial, contrary to Gibbs' arguments here, Doe gave a consistent and compelling account of numerous instances of sexual abuse, including instances or digital penetration, at the hands of Gibbs beginning when she was approximately eight years old until she was approximately eleven years old. So too, because Gibbs elected to testify in his own defense, the jury was permitted to weigh Doe's credibility regarding petty, childish lies against Gibbs' history of drug addiction, lies, and theft against his family and friends as an adult resulting in criminal charges. Upon review

of the entire record, we find the jury did not lose its way in making its credibility determinations and believing Doe over Gibbs and his witnesses.

{¶ 33} The state produced sufficient credible evidence to support Gibbs conviction for rape. Moreover, this is not and exceptional case wherein the evidence weighs heavily against the conviction. Accordingly, the first three assignments of error are overruled.

IV

{¶ 34} In his fourth assignment of error, Gibbs repeats an argument made in his first assignment of error. He argues he was denied the right to a fair trial because the indictment did not adequately put him on notice of the charges against him because the evidence presented at trial fell outside the date range specified in the indictment. Specifically, Gibbs argues the dates in the indictment stopped three months before Doe's 11th birthday.

{¶ 35} As noted above, the precise date and time of an offense generally need not be included in an indictment, since, generally, precise times or dates are not essential elements of offenses. *Glasser v. United States*, 315 U.S. 60, 66, (1942). Also as noted above, the only essential element as to time in this matter, was that Doe was under 13 years of age.

{¶ 36} Here, count one of the indictment alleged Gibbs "did engage in sexual conduct with [Doe] 04/28/2010 who was not the spouse of the offender, whose age at the time of the said sexual conduct was less than thirteen years of age, to wit 8-10." Indictment, May 5, 2023.

{¶ 37} Gibbs also received a bill of particulars which stated the charge in greater detail stating Gibbs "[p]enetrated [Doe's] vagina with his fingers * * * from the time she was 8-10 years old. Bill of Particulars, October 10, 2023.

{¶ 38} Doe testified she was "maybe 10" when the digital penetration took place. During her visit at the Children's Advocacy Center, Doe stated the abuse ended in early 2021. T(II) 63, State's Exhibit 2. We therefore find the indictment was sufficient in that it charged defendant with conduct which, if proved, would constitute the offense

{¶ 39} The fourth assignment of error is overruled.

V

{¶ 40} In his final assignment of error Gibbs argues the prosecutor committed misconduct by vouching for the credibility of the victim during closing argument. We disagree.

Applicable Law

{¶ 41} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶ 42} Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing arguments. *State v. Hunt*, 2013-Ohio-5326, ¶ 18 (10th

Dist.). As a general rule "[i]t is improper for an attorney to express his or her own personal belief or opinion as to the credibility of a witness." *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). A prosecutor improperly vouches for the credibility of a witness " 'when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.' " *State v. Thompson*, 2014-Ohio-4751, ¶ 200, quoting *State v. Davis*, 2008-Ohio-2, ¶ 232.

Gibbs' Complaint

{¶ 43} Gibbs takes issue with a single statement made by the prosecutor in closing argument wherein the prosecutor rhetorically asked the jury if Doe looked like she was enjoying the attention she was receiving when she was in tears on the stand. T(II) 195. But the "prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning." *State v. Encarnacion*, 2017-Ohio-5530, ¶ 10, (10th Dist.), citing *State v. Noling*, 2002-Ohio-7044, ¶ 94. "Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred." *Id.*

{¶ 44} The record demonstrates that the statement Gibbs complains of was part of a longer conversation regarding of some of the juror's answers in voir dire:

> Do kids lie? Yes, absolutely. Do adults lie? Yes, absolutely. Everyone at some point in their life has told a lie. And have there been instances of false accusations of sexual abuse? Sure. I'm not gonna act like that never happens. That happens. But if you recall [Defense Counsel] asked you during the voir dire process why would a child make a false accusation of sexual abuse against a person? And the

answers were: Maybe they were coached to do so, someone put them up to it. Well, in this case [Doe] definitely was not coached by her mom. She wasn't put up to this by anyone else. Her mom certainly didn't put her up it.

Another answer was a dispute with a family member. Well, there were no family disputes going on. There was no violence within the home where [Doe], you know, saw [Gibbs] being abusive to her mom and was trying to get him out of their life; there were no custody disputes going on. Nothing like that exists in this case.

Another answer was accusing one person to protect the real perpetrator. Well, there was no evidence to suggest [Gibbs] is the patsy for someone else. This isn't a case of any type of mistaken identity. [Doe] is not accusing [Gibbs] to protect someone else. She's never accused anyone of this but [Gibbs].

Another answer was well, maybe someone is trying to get him in trouble; again, why? For what reason? They want you to think this is all some big conspiracy by an 11 – now 13-year-old girl to ruin this man's life. For what reason?

She didn't even tell on him. It was accidently that her mom found out from looking at her phone. She was trying to protect her phone when her mom went to take it. She didn't want anyone to know. She didn't go after a fight and tell mom oh, by the way, [Gibbs]

does this. She didn't want her mom to know. She wasn't trying to get him in trouble.

The final answer someone mentioned was for attention; maybe kids would say this for attention. Did she look like she was enjoying that attention yesterday when she was on the stand in tears being cross-examined by [Defense Counsel]?

She told a friend about this through a test message; someone who had confided in her his own abuse, and then she opened up and told about her abuse. She never thought her mom would see that.

{¶ 45} T(II) 193-195

{¶ 46} We note that Gibbs did not object at all during the State's closing argument and has therefore forfeited all but plain error. "A claim of error in a criminal case cannot be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial." *State v. Wade*, 53 Ohio St.2d 182, (1978); Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, (1978), paragraph three of the syllabus.

{¶ 47} Gibbs has neither raised nor argued plain error and we decline to formulate an argument for him. Moreover, read in context, the prosecutor's comment does not amount to improper vouching. Rather, the prosecutor systematically dismantled the reasons the jurors themselves gave, at the invitation of defense counsel, to disbelieve the

victim in this matter. We conclude the comment was not improper and accordingly overrule Gibbs' final assignment of error.

{¶ 48} The judgment of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Gwin, P.J. and

Wise, J. concur.